**NATIONWIDE INSURANCE COMPANY, Appellant and Cross–Appellee,**

v.

**ALLI et al., Appellees and Cross–Appellants.**

[Cite as *Nationwide Ins. Co. v. Alli*, 178 Ohio App.3d 17, 2008-Ohio-4318.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 07 MA 126.

Decided Aug. 14, 2008.

18

Joseph A. Ferrante, for appellant and cross-appellee.

Christopher Sammarone; Pfau, Pfau & Marando and John C. Pfau, for appellees Patricia Alli and Albert Alli Sr.

Matthew Carty and Peter D. Traska, for appellees and cross-appellants Cynthia Mason and Albert A. Alli.

---

WAITE, Judge.

{¶ 1} Appellant, Nationwide Insurance Company, filed this declaratory-judgment action seeking a determination of coverage under the personal-liability and medical-payments provisions of a policy of condominium insurance issued to appellee, Patricia Alli.

{¶ 2} Because the child who sustained the injury at the condominium was an "insured" pursuant to the policy's own definition, as well as a "regular resident of the household," as that phrase has been interpreted by Ohio courts, that child is excluded from coverage, as the policy specifically excludes bodily injury to an insured. Furthermore, the reservation-of-rights letters issued by Nationwide put the parties on notice that Nationwide was investigating the claim for the purpose of determining coverage. Consequently, Nationwide did not violate its fiduciary duty when it examined the parties without instructing them to retain separate counsel.

## Facts

{¶ 3} For the purpose of clarity, appellees and appellees and cross-appellants will be referred to by their first names, and identified collectively as "the Allis." On or about March 2, 2003, Albert A. Alli, Patricia's six-year-old grandson ("Al"), suffered severe burns while playing with a lighter at Patricia's condominium. Al was with his sister and their cousin at the time of the accident, and it is not clear from the record which of the children was holding Patricia's lighter when Al's shirt ignited.

{¶ 4} Al and his sister were at the condominium pursuant to the terms of a divorce decree granting "reasonable and liberal visitation rights" to their father, appellee Albert Alli ("Albert"), who lived with Patricia. Al's mother, appellee and cross-appellant Cynthia Mason, formerly Cynthia Alli ("Cynthia"), who is before the court both individually and as the child's parent and natural guardian, filed a claim on behalf of Al for personal liability and medical expenses under the condominium policy.

{¶ 5} Coverage D of the policy, captioned "Personal Liability," reads, "We will pay damages the insured is legally obligated to pay due to an occurrence." However, bodily injury to an insured is excluded from personal-liability coverage. The policy defines an "Insured" as:

{¶ 6} " * * *you and the following who live in your household:

{¶ 7} "a. your relatives;

{¶ 8} "b. any other person under age 21 and in the care of you or your relatives."

{¶ 9} Coverage E of the policy, captioned "Medical Payments to Others," reads:

{¶ 10} "We will pay the necessary medical and funeral expenses incurred within three years after an accident causing bodily injury. This coverage does not apply to you. It does not apply to regular residents of your household."

{¶ 11} Pursuant to "Section I—Conditions" contained within the policy, Patricia and Albert appeared for an examination under oath as a part of Nationwide's investigation of Al's claim. According to his examination testimony, Albert moved into his mother's residence in September, 2002, approximately five months prior to Al's accident. Albert testified that he "average[d] one day a weekend" with the children. According to Patricia's testimony, the children were usually at the residence on Friday and Saturday, "sometimes every other [weekend], sometimes every weekend." She further testified that although the visitation schedule "varied," the children were usually at the residence at least two weekends a month.

{¶ 12} Albert testified that although he never exercised his visitation rights during the week, the children were at Patricia's residence for holidays and stayed there three or four days during winter break. Patricia testified that the children typically stayed overnight on holidays, except for Christmas Eve.

{¶ 13} According to Albert, the children would sleep in his bed in the loft when they were at the condominium and Albert would sleep on the couch. Both Albert and Patricia testified that the children did not keep any clothes at the condomini-

um; instead, they would bring a bag of clothes with them from their mother's house.

{¶ 14} During her examination, Patricia was asked whether Albert and his son were living in her house at the time of the accident. Patricia responded that Al did not live at her condominium and that he was visiting overnight.

### Procedural History

{¶ 15} Based on the foregoing testimony, the parties filed cross-motions for summary judgment. In the alternative, Patricia and Albert filed a motion to strike their examination testimony, alleging that it was elicited prior to any notice to them that Nationwide was investigating Al's claim with the intent of denying coverage. Patricia and Albert contend that Nationwide had a duty to inform them that the Allis' relationship with Nationwide had become adversarial in nature and that Patricia and Albert should retain separate counsel for the purposes of the examinations.

{¶ 16} The motions were referred to a magistrate pursuant to Civ.R. 53. The magistrate found that genuine issues of material fact precluded summary judgment. He based his conclusion on the ambiguity of the policy provisions regarding the term "resident," the limited evidence presented addressing the amount of visitation exercised by Albert, and the case law governing the issues. The magistrate reserved the court's judgment on the motion to strike to a later time. Nationwide, Cynthia, and Al filed objections to the magistrate's findings.

{¶ 17} The trial judge ultimately rejected the magistrate's analysis and granted summary judgment in favor of the Allis. The court reasoned that the divorce decree, which named Cynthia as the "Residential Parent," and Albert as the "Non–Residential Parent," was res judicata on the issue of residency. Having entered summary judgment in favor of the Allis, the court concluded that their motion to strike was moot.

### Standard of Review

{¶ 18} An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court as set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d

466, 364 N.E.2d 267. When a court considers a motion for summary judgment, the facts must be taken in the light most favorable to the nonmoving party. Id.

{¶ 19} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.*" (Emphasis sic.) *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. Id. at 293, 662 N.E.2d 264. In other words, the nonmoving party must produce some evidence that suggests that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 386, 701 N.E.2d 1023.

Appellant's Assignment of Error

{¶ 20} "The trial court erred when it denied Plaintiff–Appellant Nationwide's (hereafter Nationwide) Motion for Summary Judgment because it failed to follow well-settled case authority regarding dual residency of minor children of divorced parents."

{¶ 21} As a matter of initial concern, appellees assert that Nationwide waived any argument regarding the liability exclusion because it failed to raise this specific objection to the magistrate's decision. In fact, Nationwide, in its objection to the magistrate's decision, argued that "[t]he Nationwide policy contains exclusions from personal liability and medical payments coverage for residents of the household." Therefore, appellees are incorrect in this assertion.

{¶ 22} When examining an insurance policy to determine the intent of the parties we begin by interpreting any terms in dispute in a manner calculated to give the agreement its intended effect. *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83. Policy terms are given their plain and ordinary meaning. *Jones v. Cincinnati Ins. Co.* (June 21, 1999), 7th Dist. No. 96 CA 43, 1999 WL 420845. Where the policy language is clear and unambiguous, we have no authority to rewrite or otherwise construe the language the parties have adopted. *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 168, 24 O.O.3d 274, 436 N.E.2d 1347.

{¶ 23} We have previously held that policy language identical to the language at issue in this case was clear and unambiguous. See *Gerace–Flick v. Westfield Natl. Ins. Co.*, 7th Dist. No. 01 CO 45, 2002–Ohio–5222, 2002 WL 31168883 (interpreting policy language defining the term "insured" as "residents of [the insured's] household who are [the insured's] relatives or other persons under the

age of 21 and in the care of any person named above" as clear and unambiguous). Id. at ¶ 7.

{¶ 24} Here, the coverage issue turns on whether Al is an "insured" under the policy for the purposes of personal liability coverage and is a "regular resident of the [condominium]" for the purposes of medical-payments coverage. Both terms turn on the definition of the word "household."

{¶ 25} More than 20 years ago, the Ohio Supreme Court adopted the Webster's dictionary definition of the term "household" to mean "those who dwell under the same roof and compose a family" and "a social unit comprised of those living together in the same dwelling place." *Shear v. West Am. Ins. Co.* (1984), 11 Ohio St.3d 162, 166, 11 OBR 478, 464 N.E.2d 545.

{¶ 26} Over the course of the next two decades, Ohio appellate courts refined the definition of a household resident as "one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes a temporary or transient visitor." *Hill v. Cundiff,* 7th Dist. No 05 CA 824, 2006–Ohio–5270, 2006 WL 2846286, ¶ 27, quoting *Farmers Ins. of Columbus, Inc. v. Taylor* (1987), 39 Ohio App.3d 68, 70, 528 N.E.2d 968; see also *Allstate Indemn. Co. v. Collister,* 11th Dist. No.2006–T–0112, 2007–Ohio–5201, 2007 WL 2821984; *Bell v. Currier,* 5th Dist. No 02 CA–10, 2003–Ohio–3294, 2003 WL 21453054; *Entenman v. Auto–Owners Ins. Co.* (2000), 136 Ohio App.3d 541, 737 N.E.2d 119; *Am. States Ins. Co. v. Guillermin* (1996), 108 Ohio App.3d 547, 671 N.E.2d 317.

{¶ 27} Several cases have recognized the dual residency of the children of divorced parents. This court, in *Willis v. Nationwide Ins. Co.* (Dec. 30, 1986), 7th Dist. No 86–C–22, 1986 WL 14955, concluded that a child who lived with her father on weekends and had her own room where she kept clothing and toys was a resident of her father's household for purposes of his uninsured-motorist coverage. Likewise in *Taylor*, the Tenth District Court of Appeals determined that a child of divorce who resided with her mother approximately 55 percent of the year and her father 45 percent of the year was a resident of her father's household for insurance purposes. Id., 39 Ohio App.3d at 69–70, 528 N.E.2d 968.

{¶ 28} In *Snedegar v. Midwestern Indemn. Co.* (1988), 44 Ohio App.3d 64, 541 N.E.2d 90, the Tenth District Court of Appeals applied its holding in *Taylor* on facts analogous to the case at bar. The fatally injured minor in *Snedegar* had divorced parents. Prior to the accident he had lived with his mother for most of each week but spent at least one or two nights of each week at his father's residence. Based on the facts in the case, the court found that at the time of the accident the minor was a resident of his father's household. Id. at 68, 541 N.E.2d 90.

{¶ 29} Ohio appellate courts have long recognized that "[t]he fact pattern of a particular case plays a significant role in determining whether an individual is a resident of a household" and have employed two related tests to determine the dual residency of a child. See *Entenman,* supra, 136 Ohio App.3d at 549, 737 N.E.2d at 124. Some courts have examined "the amount of time the person spends at the household, the person's age, the person's intent, and whether the insured is 'legally obligated' to the person." Id. Other courts have undertaken a two-part inquiry: (1) does the minor alternately reside with each parent under a custody or visitation arrangement? and (2) does the minor's residency with each parent involve a consistent pattern between the two households for a period of some duration or regularity? Id.

{¶ 30} From a policy standpoint, this case presents a unique situation only because the phrase "resident of your household" specifically includes the minor children of an insured under the policy. The conclusion that Al is a "regular resident of [Patricia's] household" and thus an "insured" will exclude him from coverage under the policy.

{¶ 31} At least one court found that the phrase "regular resident of the household" is analogous to the phrase "resident of the household" even though the phrase is used in the policy exclusions. In *McDaniel v. Daly,* 2nd Dist. No. 22453, 2008–Ohio–2080, 2008 WL 1921640, the court employed *Taylor,* supra, and its progeny to interpret an exclusionary provision in an insurance policy which is identical to the policy at issue in this case. The *McDaniel* court found that the phrase was clear and unambiguous and concluded that genuine issues of material fact existed where the daughter of the insureds (whose child had been bitten by the insureds' dog) led a somewhat "vagabond" experience, but all of her documentation listed her parents' residence as her home. Id.

{¶ 32} Here, the testimony reflects that Al lived in Patricia's condominium at least one day a week (according to Albert) and at least two weekends a month (according to Patricia) over a period of five months, even though we note that Al did not have his own room or keep clothes at the condominium, and Patricia would characterize him as an overnight guest.

{¶ 33} Because we have previously concluded that the language of the policy at issue is clear and unambiguous, and Al lived at Patricia's condominium at least one day a week or two weekends a month for five months, Al was a regular resident of her household based upon the "duration and regularity" standard. Although Patricia may not consider Al to be a resident, the liberal interpretation afforded by Ohio courts to the phrase "resident of your household" includes the children of divorced parents who live consistently with their nonresidential parent.

{¶ 34} As a consequence, Al is excluded as an "insured" under the policy for the purposes of personal-liability coverage, and excluded as a "regular resident of the [condominium]" for the purposes of medical-payments coverage. Therefore, Nationwide's sole assignment of error is sustained.

### Cross–Assignment of Error

{¶ 35} "The trial court erred by declining to strike the transcripts of recorded statements taken by Nationwide from its own insureds because Nationwide had not adequately advised the insureds that it would deny coverage, or that the insureds should retain counsel."

{¶ 36} Because we have relied on the testimony provided by Patricia and Albert during their examinations by Nationwide representatives, we must resolve the motion to strike, which was denied as moot by the trial court.

{¶ 37} In their motion, Patricia and Albert moved to strike all statements made by them during the examinations conducted by Nationwide's attorney on Al's claim. Patricia and Albert contend that Patricia "was under the assumption that [Nationwide] would provide her with coverage for [Al's] claim." They further allege that "[a]t no time prior to making the statements, were [Patricia] and [Albert] notified that [Nationwide] would be denying coverage." Patricia and Albert state that they were not represented by separate counsel at the time of their sworn statements, and "[Nationwide] did not advise them that it would be in their best interests to obtain counsel to represent them."

{¶ 38} However, the record does not support these contentions. On September 23, 2005, Nationwide sent letters to Patricia and Albert informing them that Nationwide was proceeding with the investigation of Al's claim under a reservation of rights. The letter reads:

{¶ 39} "Please be advised Nationwide is investigating the above claim under a reservation of rights. This means a coverage issue exists and Nationwide may investigate the claim but later deny coverage. The coverage issue is whether [Al], the claimant in the above claim, would be considered an 'insured' under your policy. The liability section of your homeowner's policy contains an exclusion for injury to an 'insured.' " The letters then cite the specific policy language excluding insureds from personal-liability coverage.

{¶ 40} A reservation-of-rights letter from an insurer is a notice that even though the company is proceeding to handle the claim, certain losses might not be covered by the terms of the policy. By such a letter, the company preserves or "reserves" its right to deny coverage at a later date based on the terms of the policy. *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App.3d 23, 2008–Ohio–311, 884 N.E.2d 1130.

{¶ 41} This court recognized, in *Fairfield Machine Co. Inc. v. Aetna Cas. & Sur. Co.* (Dec. 28, 2001), 7th Dist. No. 2000 CO 14, 2001 WL 1665624, that an insurer creates a potential conflict of interest between it and the insured when it defends the insured but later denies coverage. However, this conflict arises only if the insurer undertakes its actions without previously informing the insured of any potential conflict in a reservation-of-rights letter. In the case at bar, however, Patricia and Albert were on notice that Al's claim was being investigated under a reservation of rights. As a consequence, Patricia and Albert's alleged belief that Nationwide intended to cover Al's claim is not supported by the facts of this case. Thus, the cross-assignment of error is overruled.

## Conclusion

{¶ 42} Because the testimony provided by Patricia and Albert during their respective examinations provides sufficient evidence to establish that Al was an "insured" under the policy, as well as a "regular resident of the household," he is subject to the exclusionary language of the policy. Therefore, the judgment of the trial court is reversed, and summary judgment is entered in favor of Nationwide.

Judgment accordingly.

DeGenaro, P.J., and Vukovich, J., concur.