[Cite as *Allstate Ins. Co. v. Eyster*, 189 Ohio App.3d 640, 2010-Ohio-3673.]

### IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### MARION COUNTY

ALLSTATE INSURANCE COMPANY,

     APPELLANT,                          CASE NO. 9-10-01

     v.

EYSTER ET AL.,                        O P I N I O N

     APPELLEES.

Appeal from Marion County Common Pleas Court
Trial Court No. 2008 CV 0157

Judgment Reversed and Cause Remanded

Date of Decision: August 9, 2010

APPEARANCES:

     **Adam E. Carr,** for appellant.

     **Scott E. Wright,** for appellees.

     **ROGERS, Judge.**

{¶1} Plaintiff-appellant, Allstate Insurance Company ("Allstate"), appeals the judgment of the Court of Common Pleas of Marion County denying its motion for summary judgment and granting summary judgment in favor of Jon, Penny, Keisha, and Kaley Eyster ("the Eysters"). On appeal, Allstate argues that the trial court erred in granting summary judgment to the Eysters when the trial court improperly interpreted the resident-relative exclusion in the automobile insurance policy as not prohibiting liability coverage to Keisha for her sister Kaley's injuries sustained during an accident in which Keisha was the vehicle operator. Additionally, Allstate argues that the trial court abused its discretion in overruling its motion to strike certain hearsay testimony and parol evidence offered by the Eysters in support of their motion for summary judgment. Based on the following, we reverse the judgment of the trial court.

{¶2} In February 2008, Allstate filed a complaint for declaratory judgment against the Eysters, stating that it had provided personal-liability automobile insurance coverage to the Eysters through an insurance policy issued to them on July 27, 2007; that Jon is the father of Keisha and Kaley; that Jon and Penny resided together in Marion, Ohio, and Keisha and Kaley also resided together at the same Marion, Ohio address as their parents, or at an address in Tucson, Arizona; that on July 27, 2007, in Arizona, Keisha negligently operated an automobile resulting in bodily injury to Kaley, who was a passenger in the

vehicle; that Kaley sought recovery for her injuries from Keisha as a result of the accident; that Keisha demanded that Allstate indemnify her against Kaley's claim on the basis that such indemnification was required by the liability coverage under the Allstate policy; that the Allstate policy excludes liability coverage for "bodily injury to any person related to an insured person by blood, marriage, or adoption and residing in that person's household"; and that consequently, Allstate has no obligation to indemnify Keisha against the claims of Kaley. Attached to the complaint was the Allstate policy, which set forth the liability-coverage exclusion as stated in the complaint. Additionally, the "named insured(s)" under the policy were "Jon & Penny Or Keisha Eyster," and at the beginning of the policy was a section providing that "the following definitions apply throughout the policy unless otherwise indicated":

> 5. "Insured Auto" means any auto or utility auto you own which is described on the Policy Declarations. * * *
>
> * * *
>
> 8. "Resident" means a person who physically resides in your household with the intention to continue residence there. * * * Your unmarried dependent children while temporarily away from home will be considered residents if they intend to resume residing in your household.
>
> * * *
>
> 11. "You" or "Your" means the policyholder named on the Policy Declarations and that policyholder's resident spouse.

12. "Your Insured Auto" means an insured auto you own.

Furthermore, the policy contained an "Additional Definition for Part 1," wherein the resident-relative liability exclusion was contained, stating that an "insured person" means "[w]hile operating your insured auto: a) you, b) any resident relative, c) and any other person operating it with your permission."

{¶3}   In July 2009, both Allstate and the Eysters filed a joint stipulation of the parties, stating as follows:

(1)   Defendants Jon and Penny Eyster have lived for the past sixteen years at 1937 Chapel Heights Road, Marion, Ohio 44302. * * *

(2)   Defendant Kaley Eyster and Keisha Eyster are daughters of Jon and Penny Eyster. Keisha Eyster is twenty-two years old. Kaley Eyster is twenty years old.

(3)   Keisha Eyster lived with her parents until July 2005, shortly after her graduation from high school. She then moved in with a girlfriend in Columbus, Ohio following a dispute with her parents.

(4)   In September 2005 Keisha moved to Pittsburgh, Pennsylvania to attend classes at Pennsylvania Culinary Institute. Keisha Eyster remained in Pittsburg until September 2006, when she completed her classes.

(5)   In September 2006 Keisha Eyster moved to Arizona for a four-month externship with Marriott as an assistant baker. She successfully completed the externship, received her associate degree, and was hired by Marriott as a line cook at the same facility where she had worked as an extern.

(6)   From December 2006 until June 2008 Keisha Eyster lived in an apartment at 1528 North Dodge Boulevard, Tuscon, AZ 85716. This is where she was living on July 27, 2007, the date of the accident at issue.

(7)   Keisha was a little homesick in Arizona so she asked her sister Kaley Eyster to come stay with her. At that time, Kaley Eyster was living with her parents. Kaley Eyster traveled to Arizona in April 2007 and stayed with her sister until August 2007. On July 27,

2007, the date of the accident at issue, Kaley Eyster was staying in the apartment rented by Keisha Eyster.

(8) Shortly after Kaley Eyster arrived in Arizona, she got a job at Marriott as a cafeteria assistant. This did not require any culinary training such as Keisha Eyster had. * * * Kaley Eyster got the job in order to pay for her personal expenses in Arizona.

(9) Kaley Eyster continued working at the Marriott in Arizona from April 2007 until July 2007, shortly before she was scheduled to leave.

(10) Kaley Eyster was originally scheduled to travel to Ohio on July 31, 2007 and she had purchased an airline ticket to fly to the airport in Columbus, OH on that date. The Eysters allege that on July 31, 2007, Kaley was in the hospital because of injuries received in the accident on July 27, 2007. * * *

(11) Kaley Eyster purchased her airline ticket from Orbitz, a travel website. The email confirmation from Orbitz shows a credit card billing address of 1528 North Dodge Boulevard, Tuscon, Arizona 85716. This was the address on file with Kaley Eyster's bank at the time of the accident of July 27, 2007.

(12) Kaley Eyster had a checking account and a credit card with the same bank. In May 2007 she advised the bank of a change of address to 1528 North Dodge Boulevard, Tuscon, Arizona 85716. The bank statements had previously gone to the home of her parents in Marion, Ohio. Kaley Eyster says she changed her address because she did not want her father opening her mail. On July 27, 2007 Kaley Eyster was receiving her checking account statement and credit card statement at 1528 North Dodge Boulevard, Tuscon, Arizona 85716. This was the apartment Keisha Eyster was renting and where Kaley Eyster was staying.

(13) Kaley Eyster alleges that she was suspended from OSU Marion for three quarters following the Winter 2007 quarter based on her deficient academic performances. She was eligible to return in January 2008 for the Winter 2008 quarter. Financial aid forms for the 2007-2008 academic year were due in March 2007. Kaley Eyster alleges that she had submitted the forms. She did resume her attendance at OSU Marion in the Winter 2008 quarter.

(14) On July 27, 2007 Keisha Eyster was driving the 2002 Honda Civic listed on the Allstate policy issued to Jon and Penny Eyster. Keisha Eyster's sister, Kaley Eyster, was her passenger. Kaley Eyster claims that Keisha Eyster was negligent in her operation of

the vehicle and that Kaley Eyster suffered bodily injury as the direct and proximate result of her sister's negligence. The accident occurred on a state route within the tribal lands owned by the Tohono O'odham [sic] Nation in Arizona.

(15) The parties agree that on July 27, 2007, Kaley Eyster was working in Arizona, staying overnight in her sister's apartment in Arizona, and had been doing both for more than three months. The parties agree that the evidence indicates that Kaley Eyster intended to travel to Ohio thereafter.

(16) The parties dispute whether Kaley Eyster was a "resident" of her sister's apartment while she was staying there.

**{¶4}** In September 2009, Allstate filed a motion for summary judgment, arguing that no genuine issues of material fact existed on the matter of Keisha's liability coverage for Kaley's bodily injury claim because the insurance policy excluded liability coverage to a resident relative of an "insured person," and Kaley lived with Keisha and her parents, who were both "insured persons" under the policy.

**{¶5}** On October 2, 2009, the Eysters filed a response to Allstate's motion for summary judgment and their own motion for summary judgment, arguing that no genuine issue of material fact existed on Keisha's claim for liability coverage under the insurance policy, as the exception to liability coverage for a resident relative of an "insured person" did not apply because Kaley was not a resident of Keisha's household and because the policy cannot be logically interpreted to include Jon and Penny as "insured person[s]" under the policy exception, as the exception implies that the "insured person" means the tortfeasor.

{¶6} Additionally, the affidavits of Jon, Penny, Keisha, and Kaley Eyster were filed with the trial court. Kaley stated that she was a sophomore at Ohio State University, Marion campus; that she was living with her parents at 1947 Chapel Heights Road, Marion, Ohio; that she visited her sister Keisha in Arizona from April 2007 until August 2007; that she had no intention of staying in Arizona with Keisha and was planning on returning home at the end of the summer; that she was registered to vote in Marion, Ohio; that when she submitted financial aid information in March 2007 to continue her education at Ohio State University, she listed her address as that of her parents' residence; that when she went to Arizona, she did not have an official return date but discussed with her parents and boyfriend about returning at the end of July; that when she was in Arizona, she worked at Marriott and lived with Keisha; that she worked at Marriott until the day before the accident; that she purchased an airline ticket for July 31, 2007, to return to Ohio; that while in Arizona, she changed the address on her bank account to 1528 North Dodge Boulevard, Tuscon, Arizona, because she did not want her father to open her bank statements that were being sent to her parents' residence; that she did not pay for the groceries, utilities, or rent while she lived with Keisha; that she was injured in an auto accident in which Keisha was the driver on July 27, 2007; and that as a result of the accident, she was not able to return home on her scheduled flight.

{¶7} Penny stated in her deposition that Kaley went to Arizona to visit Keisha in April 2007; that she planned on returning to Marion at the end of the summer; that her original return date was delayed due to injuries she sustained in an auto accident; and that Kaley returned in August 2007 and currently lived with her and Jon.

{¶8} Jon stated in his deposition that he notified Allstate of Keisha's change of address when she moved to Pittsburgh and, later, Arizona; that Kaley went to visit Keisha in Arizona in April 2007; that Kaley worked while staying with Keisha; that while in Arizona, Kaley received her bank statements at Keisha's address; and that Kaley went to Arizona for an "extended vacation."

{¶9} Keisha stated in her deposition that her address while residing in Arizona was on North Dodge Boulevard in Tucson; that while residing in Arizona, she worked as a cook for Marriott; that Kaley stayed with her in Arizona from April 2007 until August 2007; that she asked Kaley to come to Arizona because she was homesick, and Kaley planned to come only for the summer; that Kaley worked at Marriott with her while she was in Arizona to pay for her own expenses; that Kaley did not pay any of the rent or utilities at the residence, but paid for some of her food and gas for the car when she drove; that Kaley received her bank statement for her credit card at the Arizona address, but she received no other mail at the address; that Kaley stopped working at Marriott sometime

between July 20 and 26, 2007; and that Kaley planned to return to Ohio on July 31, 2007, but was delayed because of the injuries she sustained in the automobile accident.

{¶10} Moreover, the Eysters filed Kaley's affidavit, to which they attached her certificate of voter registration from Marion County, which indicated her status as a registered voter as of February 2007, with her address being that of her parents' residence at 1947 Chapel Heights Road, Marion, Ohio. Also attached was Kaley's Free Application for Federal Student Aid ("FAFSA"), completed in Spring 2007, for the 2007-2008 academic year, which also indicated that her address was that of her parents' residence.

{¶11} On October 19, 2009, Allstate filed a motion to strike Kaley's certificate of voter registration and FAFSA form, arguing that the certificate of voter registration was inadmissible hearsay under Evid.R. 803(A) and that the FAFSA form was not a form she had completed, but a compilation of information from an institution, to which she was not competent to testify. Furthermore, Allstate argued that Jon's deposition testimony indicating that he had notified Allstate of Keisha's move from the family's Marion, Ohio residence should also be stricken, as it was inadmissible hearsay under Evid.R. 801(C) and in violation of the parol evidence rule because the insurance policy provided that each family member, including Keisha, resided at the Marion, Ohio residence. Finally,

Allstate also argued that Keisha's deposition testimony that Kaley never intended to permanently stay with her in Arizona should be stricken, as she was not competent to testify regarding Kaley's intentions.

{¶12} In December 2009, the trial court denied Allstate's motion for summary judgment and granted summary judgment to the Eysters, stating the following in its judgment entry.

> (1)   Kaley Eyster was a resident in the household of her parents, Jon and Penny Eyster at the time of the crash on July 27, 2007.  Kaley was not a resident of her sister Keisha's household in Arizona at the time of the crash.
>
> (2)   The resident relative exclusion in the liability section of the Allstate policy does not preclude coverage for Defendant Kaley Eyster for the injuries and damages proximately caused by the negligence of Keisha Eyster in the July 27, 2007 motor vehicle crash, since Kaley was not a resident with Keisha in Arizona.
>
> (3)   The claimed exclusion does not preclude coverage if Kaley is a resident with her parents in Marion, Ohio since they were not the tortfeasor responsible for Kaley's injuries.
>
> (4)   The term "that" in the resident relative exclusion refers to Keisha Eyster's household in Arizona and is inapplicable to Jon and Penny Eyster's household in Marion, Ohio.

{¶13} It is from this judgment that Allstate appeals, presenting the following assignments of error for our review.

### Assignment of Error No. I

The trial court erred in failing to issue a declaratory judgment that the Allstate policy excluded liability insurance coverage for bodily injuries claimed by appellee Kaley Eyster.

### Assignment of Error No. II

The trial court abused its discretion by overruling Allstate's motion to strike certain hearsay testimony and parol evidence offered by the appellees in support of their motion for summary judgment.

*Assignment of Error No. I*

{¶14} In its first assignment of error, Allstate argues that the trial court erred in failing to grant its motion for summary judgment. Specifically, it contends that because the insurance policy excluded liability coverage for injuries sustained to a resident relative of an "insured person," it was not required to provide liability coverage for Kaley's injury claim against her sister Keisha, when Kaley was a resident relative of Keisha's and her parents' household and both were an "insured person" under the policy.

{¶15} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court used different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 222. Summary judgment is appropriate when, looking at the evidence as a whole, (1) there is no genuine issue as to any material fact, (2) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary

judgment is made, and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686-687. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358-359.

{¶16} The party moving for summary judgment has the initial burden of producing some evidence that demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293. In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record that affirmatively support his argument. Id. at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. Id.; Civ.R. 56(E).

{¶17} An insurance policy is a contract, and its interpretation is a matter of law for the court. *Sharonville v. Am. Emp. Ins. Co.,* 109 Ohio St.3d 186, 2006-Ohio-2180, ¶6. The coverage under an insurance policy is determined by construing the contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211. Contract terms are to be given their plain and ordinary meaning, *Dunson v. Home-Owners Ins. Co.*, 3d Dist. No. 5-09-37, 2010-Ohio-1928, ¶13, and "[w]hen the contract is clear and

unambiguous, the court 'may look no further than the four corners of the insurance policy to find the intent of the parties.'" *Fed. Ins. Co. v. Executive Coach Luxury Travel, Inc.,* 3d Dist. Nos. 1-09-17 and 1-09-18, 2009-Ohio-5910, ¶23, quoting *McDaniel v. Rollins*, 3d Dist. No. 1-04-82, 2005-Ohio-3079, ¶32.

**{¶18}** However, when a portion of an insurance contract is reasonably susceptible of more than one interpretation, it will be strictly construed against the insurer and in favor of the insured. *Niemeyer v. W. Res. Mut. Cas. Co.*, 3d Dist. No. 12-09-03, 2010-Ohio-1710, ¶9, citing *King*, 35 Ohio St.3d 208, at syllabus. Nevertheless, this rule of insurance-policy interpretation will not be applied in an unreasonable manner. *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, ¶14.

**{¶19}** Furthermore, when an insurance contract contains exceptions to coverage, there is a presumption that all coverage applies unless it is clearly excluded in the contract. *Bosserman Aviation Equip. v. U.S. Liab. Ins. Co.*, 183 Ohio App.3d 29, 2009-Ohio-2526, ¶11, citing *Andersen v. Highland House Co.* (2001), 93 Ohio St.3d 547, 549. "Accordingly, in order for an insurer to defeat coverage through a clause in the insurance contract, it must demonstrate that the clause in the policy is capable of the construction it seeks to give it, and that such construction is the only one that can be fairly placed upon the language." Id.

**{¶20}** The party seeking to recover under an insurance policy bears the burden of proof to demonstrate that the policy provides coverage for the particular loss. *Chicago Title Ins. Co. v. Huntington Natl. Bank* (1999), 87 Ohio St.3d 270, 273. However, "when an insurer denies liability coverage based upon a policy exclusion, the insurer bears the burden of demonstrating the applicability of the exclusion." *Beaverdam Contracting, Inc. v. Erie Ins. Co.,* 3d Dist. No. 1-08-17, 2008-Ohio-4953, ¶19, citing *Continental Ins. Co. v. Louis Marx & Co., Inc.* (1980), 64 Ohio St.2d 399, syllabus.

**{¶21}** Resident-relative liability exclusions have been found to be valid in Ohio as a means to prevent fraudulent intrafamilial lawsuits brought for the sole purpose of reaping a monetary windfall through an insurance policy. See *Dairyland Ins. Co. v. Finch* (1987), 32 Ohio St.3d 360, overruled on other grounds, *State Farm Auto Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, syllabus; *Nussbaum v. Progressive Cas. Ins. Co.* (1988), 61 Ohio App.3d 1, 6; *Kelly v. Auto-Owners Ins. Co.*, 1st Dist. No. 050450, 2006-Ohio-3599, ¶11. Furthermore, a resident of a household for purposes of an insurance policy has been defined as "one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but exclud[ing] a temporary or transient visitor." *Farmers Ins. of Columbus, Inc. v. Taylor* (1987), 39 Ohio App.3d 68, 70. See also *Am. States Ins. Co. v. Guillermin*

(1996), 108 Ohio App.3d 547, 553; *Nationwide Ins. Co. v. Alli,* 178 Ohio App.3d 17, 2008-Ohio-4318, ¶26.

**{¶22}** In the case at bar, the insurance policy for Keisha, Jon, and Penny provided an exclusion for liability coverage for injuries sustained by any resident relative of an "insured person," and Allstate contends that whether Kaley was a resident of Keisha's or her parents' household does not have a bearing on whether the liability exclusion applies, as Keisha, Jon, and Penny were all "insured person[s]" under the policy.

**{¶23}** In viewing the evidence presented, we find that Kaley was not a resident of Keisha's household, but of her parents' household, as evidenced by her temporary stay in Arizona and intent to return to Ohio. The policy defines a resident as "a person who physically resides in your household with the intention to continue residence there. * * * Your unmarried dependent children while temporarily away from home will be considered residents if they intend to resume residing in your household." Moreover, appellate courts have consistently found that a resident, for purposes of an insurance policy, excludes a temporary or transient visitor. See *Farmers Ins. of Columbus, Inc.,* 39 Ohio App.3d at 70; *Am. States Ins. Co.,* 108 Ohio App.3d at 553.

**{¶24}** Here, testimony was presented by Kaley, Keisha, Jon, and Penny that Kaley intended to stay with Keisha only for the summer; that Kaley lived with

her parents prior to her stay with Keisha; that her stay with Keisha was only temporary, from April until August; and that Kaley returned to Ohio to live with her parents and attend school after her recovery from the accident. Although evidence was presented that Kaley obtained employment while staying with Keisha, testimony was also presented that this employment was only for the summer, and that Kaley stopped working shortly before her planned return to Ohio.

{¶25} However, although Kaley was a resident relative of her parents' household and not Keisha's household under the policy does not mean that the liability exclusion does not apply. Allstate contends that the policy language clearly includes both Jon and Penny Eyster as an "insured person" under the liability exclusion, meaning that the exclusion would apply under these circumstances because Kaley was a resident relative of her parents' household. However, the Eysters argue that the liability exclusion applies only if Kaley was a resident relative of Keisha's household, as the term "insured person" under the liability exclusion refers to the tortfeasor. This is so because the policy language uses the word "that" to modify "person's household," with "that" indicating the person understood from the situation, which must be the tortfeasor under a plain and ordinary interpretation of the policy. Further, because the policy names the insureds as Jon and Penny "or" Keisha, it thereby creates two separate groups for

-16-

insurance purposes and refutes any argument that all three be treated as one "insured person" under the policy. Furthermore, the Eysters argue that if we find the policy to be ambiguous on the issue of whether "insured person" includes Keisha and Jon and Penny, we must interpret the policy against Allstate.

{¶26} Here, the policy language provides liability exclusion for "bodily injury to any person related to an insured person by blood, marriage, or adoption and residing in that person's household." The policy exclusion defines "insured person" as "[w]hile operating your insured auto: a) you, b) any resident relative, c) any other person operating it with your permission;" "insured auto" as "any auto or utility auto you own which is described on the Policy Declarations;" and, "you" or "your" as "the policyholder named on the Policy Declarations and that policyholder's resident spouse."

{¶27} After reviewing the resident-relative exclusion in pari materia with the rest of the policy, and interpreting the policy terms according to their plain and ordinary meaning and the definitions given, we find that the term "insured person" under the exclusion refers to Keisha and Jon and Penny. The definition for "insured person" includes "you" while "operating your insured auto." "You" and "your" is defined in the policy as the policyholder as listed in the policy declaration, which would include Jon and Penny, and/or Keisha. Furthermore, Keisha was operating a vehicle listed in the policy declarations.

{¶28} Moreover, the use of "or" in the policy cannot logically be construed to mean that Allstate meant that either Keisha or Jon and Penny could be an "insured person" under the policy, and contrary to the Eysters' assertion, we also do not find that "insured person" refers to the tortfeasor. There is no language indicating that the term should be interpreted in that manner, including no use of the word "tortfeasor" in the definition of "insured person."

{¶29} Furthermore, the Eysters' argument that the resident-relative exclusion refers to the tortfeasor is premised on the language in the definition of "insured person" included in Part I of the policy, where the resident-relative exclusion is found. However, the "insured person" definition is only an additional definition for Part I of the policy and must also be read in conjunction with the other definitions of "You" or "Your" contained at the beginning of the policy, defined as "the policyholder named on the Policy Declarations and that policyholder's resident spouse." The Eysters, and ultimately the trial court, failed to consider that the additional definitions for Part I did not exclude other definitions contained within the policy and that an "insured person" must be interpreted according to those other definitions.

{¶30} Consequently, because the plain language of the policy excludes liability coverage for injuries sustained to a resident relative of an "insured person," because Jon and Penny were both an "insured person" under the policy,

and because Kaley was a resident relative of Jon and Penny's household, we find that the liability exclusion applies to exclude Kaley's injury claim against Keisha from liability coverage under the policy.

{¶31} Accordingly, we sustain Allstate's first assignment of error.

*Assignment of Error No. II*

{¶32} In its second assignment of error, Allstate argues that the trial court abused its discretion in admitting certain hearsay testimony and parol evidence. Our disposition of Allstate's first assignment of error renders its second assignment of error moot, and we decline to address it. App.R. 12(A)(1)(c).

{¶33} Having found error prejudicial to the appellant herein, in the particulars assigned and argued in its first assignment of error, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WILLAMOWSKI, P.J., and SHAW, J., concur.