**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0275n.06

Case No. 15-3828

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 20, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DENNIS M. GEHRISCH, | ) | |
| | ) | |
| *Plaintiff-Appellant*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| CHUBB GROUP OF INSURANCE | ) | DISTRICT OF OHIO |
| COMPANIES; PACIFIC INDEMNITY | ) | |
| COMPANY; FEDERAL INSURANCE | ) | |
| COMPANY; CHUBB CORPORATION; CHUBB | ) | |
| AND SON, INCORPORATED, | ) | O P I N I O N |
| | ) | |
| *Defendants-Appellees*. | ) | |

BEFORE:     COLE, Chief Judge; CLAY and GIBBONS, Circuit Judges.

COLE, Chief Judge.  Defendant Pacific Indemnity Company denied Plaintiff Dennis M. Gehrisch's first-party claim for the diminution in value or total loss of his new Aston Martin vehicle under his automobile insurance policy.  Gehrisch then filed suit against his insurance company and its affiliates, asserting claims for declaratory relief, breach of contract, bad faith, fraud, two counts of fraudulent inducement, and negligent and/or intentional infliction of emotional distress.  The district court dismissed the complaint.  Because Gehrisch's automobile policy does not cover diminution in value, Gehrisch's vehicle was not a total loss under the terms of the policy, and Gehrisch's tort claims fail as a matter of law, we affirm.

## I.     FACTS AND PROCEDURAL HISTORY

### A.  Accident and Claim

In 2013, Gehrisch purchased a new 2014 Aston Martin V12 Vanquish for $280,755 ("vehicle"), along with an Auto Preference Vehicle Physical Damage Coverage Insurance Policy ("Policy") from Pacific Indemnity Company ("Pacific"), a subsidiary of Chubb Group of Insurance Companies.  The Policy covered the vehicle for physical damage up to an agreed value of $301,000.

In May 2014, Gulf Coast Auto Services, a third-party carrier, damaged the vehicle while transporting it from Gehrisch's residence in Naples, Florida, to his residence in Cleveland, Ohio. Pursuant to Gehrisch's claim under the Policy, Pacific repaired the vehicle for $36,065.35. Gehrisch also sought $176,000 under the Policy for the diminution in value to his vehicle—the difference between the Policy's agreed value and Pacific's determined salvage value.  Pacific denied that claim.

### B.  Lawsuit

Unhappy with Pacific's decision on his diminution in value claim, Gehrisch filed a lawsuit in Ohio state court, which was later removed to the Northern District of Ohio on the basis of diversity jurisdiction.  During discovery, Pacific disclosed an internal note from Gehrisch's file regarding the value of Gehrisch's vehicle and Pacific's calculations to determine the vehicle was not a total loss.  Gehrisch filed his Second Amended Complaint against Defendants Chubb Group of Insurance Companies dba The Chubb Corporation, Pacific, The Chubb Corporation, Federal Insurance Company dba Chubb & Son Inc., and Chubb & Son Inc. (collectively, "Insurers").[1]  Gehrisch sought declaratory relief and alleged bad faith denial of his diminution in

---

[1] According to the Policy, "Chubb Group of Insurance Companies is the marketing name used to refer to the insurance subsidiaries of The Chubb Corporation."  The Policy identifies Chubb & Son Inc. as the copyright

value claim, bad faith and fraud for failing to declare the vehicle a total loss, negligent and/or intentional infliction of emotional distress, breach of contract, and fraudulent inducement to purchase the Policy.

The Insurers moved to dismiss the Second Amended Complaint because, with the exception of Pacific, they were not parties to the Policy and "Chubb Group of Insurance Companies dba The Chubb Corporation" is not a legal entity that can be sued. The Insurers separately moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The district court granted the second motion, finding the Policy did not cover diminution in value and that Gehrisch's vehicle was not a total loss under the plain language of the Policy, and denied as moot the first motion. The district court also found that Gehrisch failed to allege facts sufficient to support his related tort claims. Gehrisch filed this appeal.

## II. STANDARD OF REVIEW

We review *de novo* the grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), construing all facts in favor of the non-moving party. *See, e.g.*, *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). However, we "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275−76 (6th Cir. 2010)). To this end, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

holder and "a division of Federal Insurance Company, as manager and/or agent for the insurers of Chubb Group of Insurance Companies." According to Pacific's Corporate Disclosure Statement to the Sixth Circuit, Federal Insurance Company, Pacific, Chubb & Son, Inc., and the Chubb Corporation are all wholly owned subsidiaries of the same parent company.

relief that is plausible on its face." *Youth Alive, Inc.*, 732 F.3d at 649 (quoting *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246−47 (6th Cir. 2012)). Because we review the complaint de novo, we need not consider Gehrisch's argument that the district court improperly applied Rule 56 summary judgment analysis to the Insurers' Rule 12(b)(6) motion to dismiss.

## III. DECLARATORY RELIEF AND BREACH OF CONTRACT

Gehrisch seeks declaratory relief holding that he is entitled to coverage for the diminution in value of his vehicle under the partial-loss or total-loss provisions of his "all-risk" Policy. Under Ohio law, insurance policies are construed in the same fashion as other contracts. *Ramsey v. Allstate Ins. Co.*, 416 F. App'x 516, 520 (6th Cir. 2011) (citing *Sharonville v. Am. Emp'rs Ins. Co.*, 846 N.E.2d 833, 836 (Ohio 2006); *Allstate Ins. Co. v. Eyster*, 939 N.E.2d 1274, 1280−81 (Ohio Ct. App. 2010)). Thus, their interpretation is a question of law for the court. *Id.* Courts must look primarily to the intention of the parties, to be "gathered from the ordinary and commonly understood meaning of the language employed." *Id.* (citations omitted); *see Chicago Title Ins. Co. v. Huntington Nat'l. Bank*, 719 N.E.2d 955, 959 (Ohio 1999). "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015) (quoting 11 R. Lord, Williston on Contracts § 30:6, p. 108 (4th ed. 2012)); *accord Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1348 (Ohio 1982).

Any ambiguities must be construed in favor of the insured. *Ramsey*, 416 F. App'x at 520. However, "that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1262 (Ohio 2003) (quoting *Morfoot v. Stake*, 190 N.E.2d 573, 573 (Ohio 1963)). We must presume that "words are used for

a specific purpose and . . . avoid interpretations that render portions meaningless or unnecessary." *Wohl v. Swinney*, 888 N.E.2d 1062, 1066 (Ohio 2008) (citing *State v. Bethel*, 854 N.E.2d 150, 166 (Ohio 2006)). In our analysis, we examine the insurance contract as a whole and presume that the policy's language reflects the intent of the parties. *Chicago Title*, 719 N.E.2d at 959.

As in any contract dispute, we begin with the text of the contract. Gehrisch's Policy provides coverage against "all risk of physical loss . . . unless stated otherwise or an exclusion applies." The Policy goes on to "otherwise state" the types of physical loss that are and are not covered. Gehrisch concedes in his briefs that diminution in value is not a "risk of physical loss" triggering coverage under the policy. Nevertheless, he challenges the burden of proof the district court applied, argues that partial loss under the Policy is unlimited, and asserts that the Policy covers diminution in value. All of these arguments fail.

## A. Burden of Proof

Ohio courts presume that coverage applies unless it is clearly excluded. *Ramsey*, 416 F. App'x at 520 (citing *Eyster*, 939 N.E.2d at 1281). The insured bears the initial burden of proving that the policy covers the claimed loss. *Id.* (citing *Chicago Title*, 719 N.E.2d at 959; *Eyster*, 939 N.E.2d at 1281). If an insurer denies coverage under a policy exclusion, the burden shifts to the insurer to demonstrate that exclusion applies. *Id.* (citing *Eyster*, 939 N.E.2d at 1281).

Gehrisch asserts that after he established coverage applied, the district court failed to shift the burden to the Insurers. But that is not the case. While Gehrisch established that the *collision* was an event triggering coverage under the Policy, he did not establish that diminution in value was the *type* of loss covered by the Policy. Further, Pacific did not rely on any of the exclusions

in the policy in denying Gehrisch's claim. Because he did not establish that the Policy covers the claimed loss, the burden properly remained on Gehrisch to prove that coverage applies.

## B. Partial Loss

Gehrisch argues that the accident was the "risk of physical loss" and diminution in value is within the scope of the Policy's unlimited "partial-loss" provision. The Policy provides coverage for a "partial loss" under certain circumstances:

> If the vehicle is partially damaged, we will pay the amount required to *repair or replace, whichever is less, the damaged part(s) without deduction for depreciation*, up to the amount of coverage for each occurrence with labor and parts of like kind and quality. We will use original equipment manufacturer parts, except for window glass replacement, *for repairs* arising out of a covered loss to your vehicle, unless the parts are no longer manufactured or no longer available.

Gehrisch's interpretation fails because it violates several principles of contract interpretation.

First, it is well-settled that courts should "avoid interpretations that render [words] meaningless or unnecessary." *Wohl*, 888 N.E.2d at 1066. Contrary to Gehrisch's argument, the Policy provides several limitations for a partial loss: (1) repair or replacement only, (2) whichever costs less, (3) for "damaged parts," but (4) only to the extent of the amount of coverage. Here, the amount of coverage is the agreed value of the vehicle, $301,000. Pacific determined the damaged parts could be repaired for $36,065.35. "Diminution in value" is not a damaged *part*. Thus, the plain language of the Policy contradicts Gehrisch's contention that the policy provides unlimited coverage for a partial loss or diminution in value.

Similarly, courts are to "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Chicago Title*, 719 N.E.2d at 959. As an initial matter, the Policy is titled "Auto Preference Vehicle *Physical* Damage Coverage." This indicates that the parties intended to cover only physical damage to the vehicle. The insurance summary supports this intention, stating the "policy provides you with coverage

against *physical* loss if your vehicle is damaged or destroyed. The *kinds* of losses that are covered, and any special limits that apply, are explained in detail in the policy." The Policy's exclusions provide a list of ten circumstances under which the "all risks" provision will not provide coverage: intentional acts, vehicles used for a fee, racing or track usage, breakdown, fungi and mold, confiscation, electronic equipment, tapes and discs, acts of war, and nuclear or radiation hazard. Notably, all of these are particular "*risks* of physical loss" and not *types* of loss or damage resulting from a risk, supporting the Insurers' argument that diminution in value is a measure of damages, not a risk or peril for which coverage is triggered.

Gehrisch further argues that the provision regarding "lease gap coverage" is "similar to the diminution in value [in that] the unpaid amount due on a lease is [a] non-tangible/non-physical loss that flows from a covered loss."[2] He argues that this contradicts the Insurers' arguments and supports his theory that "'[p]hysical' damage to the insured vehicle is only the triggering event, not a limitation on the amount of coverage or damages recoverable." In fact, this provision proves just the opposite—"lease gap coverage" is included in the Policy as "extra coverage." This "extra coverage," which requires an additional premium, is offered "in *addition* to covering the physical loss to your vehicles [as] related coverages" and can exceed the agreed value of the vehicle. Thus, "lease gap coverage" and coverage for similar losses, such as diminution in value, do not cover *physical* losses, but provide coverage over and above any physical loss. For an additional premium, other options for *extra* coverage in *addition* to physical loss are available, including permanent electronic equipment, newly acquired vehicles, trailers, temporary substitute vehicles, roadside assistance, loss of use, lock replacement, child safety restraint system replacement, and pet injury. Similarly, non-tangible and non-physical

---

[2] Gehrisch did not purchase "lease gap coverage" on his vehicle.

losses in the form of liability are not covered by the Policy and require a separate liability policy. This supports the Insurers' conclusion that the Policy only covers *physical* damage to the vehicle, rather than other types of loss an insured may experience in relation to a covered risk.

Finally, Gehrisch's interpretation would require us to ignore or misconstrue Ohio case law deciding that policies with similar language do not cover diminution in value. Gehrisch argues that a promise to "repair or replace . . . damaged part(s) . . . with labor and parts of like kind and quality" includes a promise to return the vehicle to the condition and value it was in before the collision, essentially covering diminution in value. However, Gehrisch offers no support for this bare assertion except for reliance on a few tort cases, not contract cases, in which Ohio courts have held that diminution in value is recoverable in *tort* claims. *See, e.g.*, *Inglis v. American Motors Corp.*, 209 N.E.2d 583, 587 (Ohio 1965) (breach of warranty claim); *Falter v. City of Toledo*, 158 N.E.2d 893, 894, syllabus ¶ 1 (Ohio 1959) (third-party collision claim, "Under the general rule the owner of a damaged motor vehicle may recover the difference between its market value immediately before and immediately after the collision[.]").

Nevertheless, that principle does not extend to cases where a *contract* defines coverage and loss. Instead, Ohio courts have consistently held that insurance policies with similar language do not cover diminution in value. *See, e.g.*, *Kent v. Cincinnati Ins. Co.*, No. CA2001-04-100, 2001 WL 1566969, at *2−3 (Ohio Ct. App. Dec. 10, 2001) (rejecting claim for diminution in value under Alabama law where a contract provided that the insurer's "limit of liability for loss will be the lesser of the: 1. Actual cash value of the stolen or damaged property; 2. Amount necessary to repair or replace the property; or 3. Stated amount shown in Declarations[.]"); *Samuels v. Nationwide Mut. Ins. Co.*, No. 78AP-842, 1979 WL 199225, at *1−2 (Ohio Ct. App. May 1, 1979) (rejecting claim for diminution in value where a contract

provided that the insurer's "obligation to pay for . . . [c]ollision loss is limited to the cash value of the auto or its damaged parts at the time of loss[.]").

As the Insurer's counsel aptly explained during oral argument, "it's an all-*risk* policy, not an all-*damages* policy." While Gehrisch is correct that his vehicle's diminution in value was caused by "a 'risk of physical loss' that is covered and payable under the Chubb Policy," diminution in value is simply not the *type* of damage the Policy covers. Gehrisch's claim for diminution in value based on partial loss is simply not covered by the Policy, and as a result, his claims for declaratory relief and breach of contract fail.

## C. Total Loss

Gehrisch alleges that the Insurers "reaped a financial windfall in the amount of $176,000 by repairing the Vehicle and not declaring the Vehicle a total loss." The Policy provides that a vehicle is considered a total loss "when the salvage value (determined by [Pacific]) plus the cost (labor and parts of like kind and quality without deduction for depreciation) necessary to repair the vehicle is equal to or greater than the market value of the vehicle." Pacific determined that the salvage value of Gehrisch's vehicle, $125,000, plus the cost to repair, $36,065.35, were less than the pre-accident market value of the vehicle, $297,940. Thus, Gehrisch's vehicle was not a total loss. Gehrisch offered his own appraisal of the pre- and post- accident market value, but did not challenge Pacific' other calculations.

Gehrisch argues the term "market value" is ambiguous because it is not defined, and therefore must be construed in his favor to mean the post-repair market value of his vehicle after the accident. "Just because the policy does not define a term does not mean that the policy is ambiguous." *Chicago Title*, 719 N.E.2d at 959. Moreover, this interpretation is untenable— because vehicles always lose some of their value after an accident, Gehrisch's method would

*always* result in a total loss finding. Rather than create ambiguity where there is none, it is apparent that the Policy did not intend to *always* construe a total loss, otherwise there would be no *partial*-loss provision. Further, Ohio law generally construes "market value" for loss calculations as the value of the object prior to the accident, not after the accident. *See, e.g., Jones v. Auto-Owners Mut. Ins. Co.*, No. L-98-1297, 1999 WL 435103, at *2 (Ohio Ct. App. June 30, 1999); *Asmaro v. Jefferson Ins. Co. of New York*, 574 N.E.2d 1118, 1122 (Ohio Ct. App. 1989); *see also Schaller v. Nat'l All. Ins. Co.*, 496 F. Supp. 2d 890, 898 (S.D. Ohio 2007). Therefore, using either Pacific's calculated pre-accident market value of $297,940, Gehrisch's appraised value of $250,000, or the policy's agreed value of $301,000, the vehicle was not a total loss because the salvage value combined with the cost to repair was less than the market value of the vehicle just prior to the accident.

Gehrisch's claim for diminution in value based on total loss is simply not covered by the Policy and, as a result, his claims for declaratory relief and breach of contract fail.

## IV. TORT CLAIMS

Gehrisch also alleges tort claims for bad faith, fraud, two counts of fraudulent inducement, and negligent and/or intentional infliction of emotional distress. Although all of these claims are listed in Gehrisch's statement of the issues, only one, bad faith, is developed in his brief. Gehrisch does not set forth any argument related to his claims for fraudulent inducement and negligent and/or intentional infliction of emotional distress. "Our general rule is that '[a]n appellant abandons all issues not raised and argued in its initial brief on appeal.'" *Guilmette v. Howes*, 624 F.3d 286, 292 (6th Cir. 2010) (en banc) (quoting *United States v. Johnson*, 440 F.3d 832, 845−46 (6th Cir. 2006)). Even after the Insurers alerted him to this defect, Gehrisch did not attempt to revive these claims on reply. Accordingly, we treat those

claims as abandoned. But, even if the claims for fraudulent inducement and negligent and/or intentional infliction of emotional distress were not abandoned, they fail. As Gehrisch conceded at oral argument, his tort claims are all based on the Insurers' breach of contract and if that claim fails, so too do all of Gehrisch's tort claims.

Gehrisch only summarily mentions his claim for fraud, with no recitation of elements or citation to legal authority. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *United States v. Santillana*, 540 F.3d 428, 433 n.1 (6th Cir. 2008) (quoting *United States v. Sandridge*, 385 F.3d 1032, 1035−36 (6th Cir. 2004)). We also treat these types of arguments as abandoned. *Id.; see also Guilmette*, 624 F.3d at 293. Even if Gehrisch's fraud claim was not abandoned, it fails because it too was premised upon the breach of contract claim.

Though Gehrisch legally developed his claim that "Chubb failed to exercise good faith in handling, investigating, and refusing to pay the [diminution in value] claim," or declare the vehicle a total loss, it too fails. "[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 400 (Ohio 1994) (citation omitted). As discussed above, the Policy did not obligate the Insurers to pay for the vehicle's diminution in value or declare it a total loss. Thus, the Insurers' refusal to pay was reasonably justified.

## V.    CONCLUSION

Gehrisch's Policy does not cover diminution in value because it is not physical damage nor did the damages to his vehicle meet the Policy's definition of total loss. Accordingly,

declaratory judgment is not warranted and Gehrisch's claims for breach of contract and bad faith fail. Because he failed to argue them on appeal, Gehrisch abandoned his claims for fraud, fraudulent inducement, and negligent and/or intentional infliction of emotional distress; but they would fail even if they were not abandoned. As a result, we affirm the district court's dismissal of the complaint pursuant to Rule 12(b)(6).