ROSS *v.* DAMM.

1. REFORMATION OF INSTRUMENTS—EQUITY—MISTAKE—FRAUD.
    Reformation of an instrument will generally be granted in equity so as to express actual intent of parties where there is clear evidence that both parties reached an agreement, but as the result of mutual mistake or mistake on the one side and fraud on the other, the instrument does not express the true intent of the parties.

2. SAME—EVIDENCE—MUTUAL MISTAKE—FRAUD.
    In order to have reformation of an instrument for mutual mistake of the parties there must be clear evidence of it; or of mistake on one side and knowledge of the mistake, plus concealment on the other side.

3. SAME—DEEDS—MONUMENTS—BOUNDARIES.
    Where common grantor, owning tract of land between road and lake but occupying tract having boundaries running at angle to those described, whose surveyor erroneously placed west line lake shore stake east of line, which stake was a known monument recognized by all parties hereto, and gave to defendant grantee, owner of tract on the west, deed of westerly strip of land 100 feet wide and deed of balance of tract to plaintiff, such deeds are reformed to grant defendant grantee strip 100 feet wide along supposed boundary running from stake and adjustment made as to improvements and oil rights.

4. LIMITATION OF ACTIONS—REFORMATION OF INSTRUMENTS—DEEDS —RECOVERY OF LAND.
    Action for reformation of deeds against common grantor of plaintiff and other defendant, so as to recover parcel of land from latter, *held*, not barred where commenced within 15 years from time of execution of deed and taking of possession (3 Comp. Laws 1929, § 13964).

Appeal from Muskegon; Vanderwerp (John), J. Submitted January 8, 1935. (Docket No. 1, Calendar No. 37,997.) Decided May 17, 1935. Rehearing denied June 19, 1935.

Bill by Catherine Ross against Carl P. Damm and wife, and Frank J. Walsh and wife, for the reformation of deeds and an accounting. Decree for plaintiff. Defendants Damm appeal. Modified and remanded.

*Martin H. Carmody* and *Henry C. Hart,* for plaintiff.

*A. S. Hinds* (*Joseph F. Sanford,* of counsel), for defendants Damm.

BUTZEL, J. The instant case arises out of a dispute between plaintiff, Catherine Ross, and defendants, Carl P. Damm and Dollie Mae Damm, as to the respective properties to which they are entitled as the result of simultaneous conveyances made by a common grantor in 1919. Plaintiff seeks reformation of the deeds on the ground of mutual mistake and fraud. A visual picture of the properties involved is necessary for a proper understanding of the case. We have, therefore, appended a rough sketch, appropriately lettered, which will be referred to throughout this opinion. The sketch is not drawn to scale, nor is it intended to be accurate, either as to distances or as to angles. It roughly follows a blueprint introduced in evidence at the trial as exhibit "A." We have added the letters and one or two additional lines for the sake of clarity.

In 1909 Gertrude H. Walsh acquired two adjoining parcels of property, situated on the southwest quarter (lot 3) of section 12, town 10 north, range 17

west, Laketon township, Muskegon county, on the north shore of Bear lake, containing approximately 42 acres. According to the description in the deeds, the western boundary of this property was the straight north and south line, BB', on the accompanying sketch, while the eastern boundary was the straight north and south line AA'. The property was bounded on the north by the road, and on the south by Bear lake. However, when Mrs. Walsh and her husband, Frank J. Walsh, took possession under the deeds, they immediately occupied up to an old fence on the east, known as the Andree fence, line CC' in the sketch. Both the Walshes and Andree, the owner of the land to the east, recognized this fence as the correct boundary line between their respective properties. Immediately after acquiring the property, Walsh had a survey made and the westerly boundary line was located by Alfred B. Horton, a surveyor, who was directed to run a line from the northwest corner of the Walsh property on the road, due south to the lake shore. However, through some error the line apparently was run in a southeasterly direction, BD', rather than due south, and seems to have paralleled an old government line some distance to the east. An oaken stake, driven on the lake shore at the point D', was generally recognized by all parties at that time and for at least 20 years thereafter, as marking the true southwest corner of Walsh's property, notwithstanding the fact that according to the description contained in the deeds by which the tract was acquired, the true southwest corner was the point B'.

In 1910 the owner of the property west of the Walsh tract, evidently relying on the stake as marking the southeasterly point of his property, erected

a house overlapping the line BB′. In 1916 defendants Carl P. Damm and Dollie M. Damm, by deed from John B. Rouse and wife, acquired the property immediately west of and adjoining the Walsh property, together with the house above mentioned. The deed gave them land of the width of 2.01 chains on the north, represented by the line RB, and 3.90 chains on the south. Although there is some dispute as to where the eastern boundary of the tract conveyed to the Damms by Rouse would fall under the rather ambiguous description contained in the deed, there is no doubt but that the parties all understood that the stake, D′, marked the actual boundary between the properties of the Damms and the Walshes. From the time of this conveyance in 1916, Damm immediately took possession of and cultivated the property up to the stake line, BD′. Walsh testified at the trial that it was understood between Damm and himself that the stake marked the true boundary between their properties, and that he, Walsh, had never claimed any land to the west of that line. Damm was desirous of securing more frontage on the lake shore, and Walsh had promised him that if he ever disposed of his property, he would give Damm an opportunity ·to purchase a 100-foot strip off the west side of his land.

In 1919 John D. Ross and Catherine Ross, plaintiff, negotiated with Walsh for the purchase of his entire property, the original price being fixed at $4,500. However, Damm reminded Walsh of their understanding as to the 100-foot strip, and it was accordingly agreed that Walsh should deduct $500 from the purchase price, and sell to Ross his entire tract less a 100-foot strip off the west side, which was to be sold to Damm for $500. A memorandum

to this effect was signed by Walsh and delivered to Ross, in which the parcel to be conveyed to Ross was described as containing 37 acres, while Damm's 100-foot strip was described as approximating 6 or 7 acres. At this time Walsh believed that his property ran from the stake line, BD′, on the west, to the Andree fence, CC′, on the east. He also believed that there were approximately 43 acres between these two lines, and he intended to convey to Ross the 37-acre tract running from a point 100 feet east of the stake to the Andree fence. In accordance with this understanding the proposed boundary line between Damm and Ross was established by measuring from the stake, D′, east 100 feet to E′. From this point the line was run due north to the road, Walsh intending it to be parallel with the stake line, BD′, which he believed to be a straight north and south line. It is apparent from the record that the parties were primarily interested in the lake frontage at the time, and that but scant attention was paid to the rear of the property, which was considered of but little value, oil not yet having been discovered.

Deeds were then executed by Walsh to Damm and Ross, almost simultaneously, as part of the same transaction. It appears from the record that the descriptions contained in the deeds were obtained from a survey made by Damm prior to the execution of the deeds. The deeds were not made out by Walsh, nor did he furnish the data for them. He testified that he did not read them carefully. The Damm deed, instead of describing a strip of land 100 feet wide, and containing 6 or 7 acres, called for a strip 232.32 feet wide, extending from line BB′ to line EE′ on the accompanying sketch, containing about 14 acres—notwithstanding the fact that Damm

and his predecessor in title had for years prior to that date claimed to own, without dispute by Walsh, the triangle of property between the lines BB' and BD'. On the other hand, the Ross deed, instead of describing a 37-acre tract extending to the Andree fence, CC', on the east, called for a tract bounded on the east by the line AA', and containing approximately 29.7 acres. However, the Rosses immediately went into undisputed possession of the property up to the Andree fence on the east, and subsequently, in 1928, they received a quitclaim deed from Andree to the intervening triangle of land between the line AA' and the fence, CC', containing approximately 3.9 acres. It is claimed that Damm knew, as a result of his survey, that the stake line did not mark the true western boundary of Walsh's property, that Damm also knew that he was receiving more, and the Rosses were receiving less property than they were respectively entitled to; and that he concealed this fact from the other parties.

Following the conveyances to Damm and Ross, a fence was built by the two parties on the line EE', between their respective properties under the deeds. In 1928 oil was discovered towards the rear of the property, and negotiations took place between Ross and an oil company for the lease of his property. A survey of the premises was made by the oil company, and it was then discovered, apparently for the first time, that Ross had received under his deed only 29.7 acres instead of 37 acres, and that the deed covered only up to the line AA' instead of the Andree fence on the east. The Andree quitclaim deed, mentioned above, followed this discovery. Upon receipt of this information, the Rosses began to investigate. Mr. Ross died in March, 1931, and his widow, plain-

tiff herein, found in his deposit box the written memorandum entered into between Ross and Walsh prior to the execution of the deeds. She thereupon had a survey made, which disclosed that the true western boundary of Walsh's property was the line BB', and that Damm had received by his deed a strip of land 232.32 feet wide and containing 14 acres, instead of a 100-foot strip containing six or seven acres. In September, 1931, Mrs. Ross brought suit against the Walshes and the Damms, seeking reformation of the deeds. She claimed that the deeds should have fixed the line between Damm and Ross at FF', 100 feet east of Walsh's true western boundary, BB'; that the failure of the deeds to so provide was the result of mutual mistake, and fraud by Damm. She asked that the deeds be reformed so as to give Damm the land between the lines BB' and FF', and plaintiff the land to the east of the line FF'. She also sought an accounting of moneys received for oil rights, and other relief.

The trial court held, as claimed by plaintiff, that the deeds resulted from mutual mistake on the part of Walsh and Ross, induced by fraud on the part of Damm; and that plaintiff was entitled to the land east of the line FF'. However, the court found that it would be inequitable to order a reconveyance to plaintiff of the property between the lines FF' and EE', in view of valuable improvements which had been placed on that land by Damm. He therefore awarded plaintiff a decree against Damm for $2,600, for the loss of this land, plus $2,400 for loss of profits on oil rights, plus interest. Defendants Carl P. Damm and Dollie M. Damm have appealed from this decree.

Plaintiff's entire suit was based on the theory of reformation. The general theory of reformation is

that where there is clear evidence that both parties reached an agreement, but as the result of mutual mistake, or mistake on the one side and fraud on the other, the instrument does not express the true intent of the parties, equity will reform the instrument so as to express what was actually intended. There must be clear evidence of mutual mistake, *Tripp* v. *Hasceig,* 20 Mich. 254, 263 (4 Am. Rep. 388); *Kinyon* v. *Cunningham,* 146 Mich. 430; *Miles* v. *Shreve,* 179 Mich. 671, 679; *Crane* v. *Smith,* 243 Mich. 447; or of mistake on the one side and knowledge of the mistake, plus concealment thereof, on the other side, *Retan* v. *Clark,* 220 Mich. 493.

The two deeds to Ross and Damm in the instant case constituted a part of the same transaction, in which Walsh was the common grantor. It is not contended that Walsh was guilty of fraud, but it is claimed that there was mistake on his part. After carefully considering the record, which presents the facts above noted, we have come to the conclusion that whatever may be said as to Damm and Ross, the deeds do express the true intent of the grantor Walsh, in placing the southern point of the boundary between Damm and Ross at the point E', 100 feet east of the stake D'. It may be true that had Walsh known at the time of the conveyances that his actual western boundary was the line BB', rather than the stake line BD', he might have entered into some other agreement than that expressed in the deeds. On the other hand, even possessing that knowledge, he might still have sold to Damm the 100 feet on the lake shore east of the stake, increasing the purchase price to cover the land between the line BB' and the stake line BD',—or without changing the purchase price, recognizing Damm's

right to this triangular strip by long user. It is impossible to determine what Walsh's intention would have been under those circumstances. In any event, that is a question arising solely between Damm and Walsh. It does not entitle plaintiff to reformation of the deeds as requested. The controlling fact, as far as plaintiff's rights are concerned, is that at the time of the transaction Walsh's actual intention, based on his knowledge at that time, was to sell to Damm a strip of land 100 feet wide, running east from the stake, D', and to convey to Ross all his property east of such strip.

On the other hand, we believe that there was mutual mistake in fixing the northern point of the boundary between Damm and Ross at the point E' on the road. At the time the deeds were executed it was the understanding of the parties that the stake line, BD', marked the true western boundary of Walsh's property; that Damm was to receive a parallel strip 100 feet in width, east of the stake line, and located on the sketch between the lines BD' and FE'; that Ross should receive the remainder of Walsh's property to the east. Under the description contained in the deeds, however, Damm received in addition to the land already occupied by him prior to that time, the tract located on the sketch between the lines BD' and EE'—a strip extending 100 feet east of the stake line on the south, but extending 232.32 feet east of that line on the north. This error apparently resulted from the fact that Walsh had always believed the stake line, BD', to be a north and south line, and accordingly in establishing the boundary between Ross and Damm, he ran the line due north to the road from the point E', intending it to be parallel to the stake line. Damm, himself, admitted at the trial that he

did not expect to receive property of the width of 232.32 feet on the north.

In order to express the true intent of the parties, the deeds should be reformed so as to establish the boundary between plaintiff and Damm on the line FE′. If this be done, Damm will have received a parallel strip of land east of the stake line, BD′, 100 feet wide both north and south; while plaintiff will have in addition to her present property the triangular strip located on the sketch between the lines FE′ and EE′, which, together with the land described in her original deed, and the strip on the east quitclaimed to her in 1928 by Andree, will constitute substantially the 37-acre tract which the parties had in mind at the time Walsh executed the deeds. The record does not show whether Damm has made valuable improvements on the triangular strip between the lines FE′ and EE′ which cannot be removed. If so, it may be necessary to award plaintiff the value of this property, rather than the land itself. Nor can it be determined whether the Damms realized moneys from oil rights on this particular strip. These questions, and others which may present themselves, must be determined by the trial judge, to whom the case is referred for further hearing, and for entry of such decree as may then be determined, in accordance with this opinion.

Plaintiff's right to recover this strip is not barred by the statute of limitations, which allows 15 years for the bringing of an action for the recovery of land. 3 Comp. Laws 1929, § 13964. Defendants Damm will recover costs in this court.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.

AA'—Actual original eastern boundary of Walsh property, according to description in deed.

BB'—Actual original western boundary of Walsh property, according to description in deed.

CC'—Old Andree fence line.

BD'—Horton stake line.

RR'—West boundary of land conveyed to Damm by Rouse in 1916.

EE'—Present boundary line between Ross and Damm.

FF'—Line fixed by trial court as proper line between Ross and Damm.

FE'—Correct line between Ross and Damm as shown by intent of the parties.

■—House erected by owner of property west of Walsh after Horton stake line was laid out.

□ □—Swimming pool and bath house erected by Damm after receiving deed from Walsh.