NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0174n.06

No. 10-3101

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 23, 2011**
LEONARD GREEN, Clerk

DOUGLAS C. RAMSEY,

    Plaintiff-Appellant,

v.

ALLSTATE INSURANCE CO.,

    Defendant-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

_____ /

Before:    KEITH, MERRITT, and MARTIN, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.  Allstate Insurance Company denied Douglas Ramsey's claim after a fire seriously damaged the house that he had inherited from his father. Although the district court correctly found that Douglas did not have an express insurance contract with Allstate, we **REVERSE** and **REMAND** for the district court to consider in the first instance whether Allstate received constructive notice of Douglas's father's death and is estopped from denying coverage, and whether the parties' conduct established an implied-in-fact contract between Douglas and Allstate.

**I.**

Douglas's father, Ralph Ramsey, purchased homeowner's insurance from Allstate in September of 1993 and renewed the policy annually until his death in August of 2002. Bank of America had a mortgage on the house and paid the insurance premiums from Ralph's account. After

Ralph died, Bank of America continued to pay the insurance premiums, but did so from Douglas's account. Allstate continued to renew the insurance coverage but never named Douglas on the policy. The policy states in pertinent part:

**Policy Transfer**
You may not transfer this policy to another person without our written consent.

**Continued Coverage After Your Death**
If you die, coverage will continue until the end of the premium period for:
1) your legal representative while acting as such, but only with respect to the residence premises and property covered under this policy on the date of your death.
2) an insured person, and any person having proper temporary custody of your property until a legal representative is appointed and qualified.

There is no evidence that Douglas ever directly notified Allstate of Ralph's passing. Douglas alleges that he informed Bank of America and Bank of America continued to pay the insurance premiums, renewing the policy in Ralph's name.

After the fire on June 26, 2008, Allstate took possession of the home, inspected it, and boarded it up. Allstate put Douglas's salvageable property in storage and paid him $500 to cover initial expenses. However, on July 20, Allstate sent Douglas a letter stating that it would not cover the loss from the fire. There are no allegations of any improprieties, but Allstate discovered that the policy was still only in Ralph's name. Therefore, Allstate determined that it had no obligation to cover the loss to what was now Douglas's house.

After Allstate denied coverage, the policy automatically renewed once again in September of 2008. However, Allstate argues that this renewal, after it had learned of Ralph's death, was inadvertent. Allstate canceled the policy when it discovered the error.

The district court granted Allstate's motion for summary judgment holding that under the terms of the insurance contract, coverage ceased at the end of the premium period following Ralph's death. The district court found that Douglas did not notify Allstate of Ralph's death before the fire and, even if he had provided notice, the loss is still not covered because the policy is not transferrable.

**II.**

**A.     Summary Judgment Standard.**

"The Sixth Circuit reviews de novo a district court's grant of summary judgment." *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 627 (6th Cir. 2008). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Hamilton*, 522 F.3d at 627. "The moving party has the initial burden of proving that no genuine issue of material fact exists," and the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Because jurisdiction is based on diversity of citizenship, the substantive law of Ohio applies.

**B.     Whether There is an Express Insurance Contract Between Douglas and Allstate.**

According to the terms of the policy, Ralph's express insurance contract with Allstate terminated at the end of the first premium period following his death. Douglas could not renew the

policy on behalf of Ralph, the named insured, because Ralph had passed away. Additionally, Douglas could not assume the policy because the contract contained an anti-assignment clause, and provisions prohibiting assignment are valid and enforceable, *see Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 2006-Ohio-6551, 861 N.E.2d 121, at ¶¶ 36-39 (noting that an assignment could dramatically alter the insurer's exposure). Therefore, the district court correctly held that Douglas does not have any viable claim under the express terms of Ralph's policy.

Douglas argues that he became an insured person under Ralph's policy when he moved into the house before Ralph died. While Douglas did meet the policy's definition of an insured person, the express insurance contract terminated at the end of the premium period following Ralph's death. Therefore, the district court correctly concluded that this is not a basis for finding Douglas covered. Douglas ceased to be an insured person under Ralph's policy when the policy terminated at the end of the premium period following Ralph's death.

**C.      Whether Allstate Received Constructive Notice of Ralph's Death.**

The district court correctly found that there is no evidence to suggest that Douglas directly notified Allstate of Ralph's passing. However, the district court failed to consider whether Allstate is estopped from denying coverage because it received constructive notice of Ralph's death. The doctrine of equitable estoppel is not directly applicable but generally prevents a party who made a representation from later denying it if the other party relied on the representation. *Hortman v. Miamisburg*, 2006-Ohio-4251, 852 N.E.2d 716, at ¶ 20 (Ohio 2006).

Although Douglas notified the mortgage holder, the district court appears to have correctly concluded that there is no evidence in the record from which it may conclude that he directly notified

Allstate. However, Ralph's estate went through probate proceedings and Douglas took title to the home, which may have provided Allstate with constructive notice of Ralph's death. Therefore, we remand for the district court to consider whether Allstate received constructive notice of Ralph's death and, if it did, whether it is estopped from denying coverage to Douglas.

**D.      The Terms of the Policy Do Not Explicitly End All Liability After the Named Insured Dies.**

The Ohio Court of Appeals recently provided an informative summary of the procedure to follow when interpreting insurance policies in *Allstate Insurance Co. v. Eyster*, 2010-Ohio-3673, 939 N.E.2d 1274, at ¶¶ 17-20 (Ohio Ct. App. 2010). Insurance policies are contracts, the proper interpretation of which is a question of law for the court. *Id.* at ¶ 17 (citing *Sharonville v. Am. Emp. Ins. Co.*, 2006-Ohio-2180, 846 N.E.2d 833, at ¶ 6 (Ohio 2006)). The scope of coverage is determined by construing the contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *Id.* (quoting *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988)) (internal quotation marks omitted). When the contract "is reasonably susceptible of more than one interpretation, it will be strictly construed against the insurer and in favor of the insured." *Id.* at ¶ 18.

Initially, the insured bears the burden of proving that the policy covers the claimed loss. *Id.* at ¶ 20 (citing *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 719 N.E.2d 955, 959 (Ohio 1999)). However, if an insurer denies coverage based on a policy exclusion, the insurer bears the burden of demonstrating that the exclusion applies. *Id.* Ohio courts presume that coverage applies unless it is clearly excluded. *Id.* at ¶ 19.

Allstate argues that the policy's provision describing coverage after the death of the named insured precludes it from any liability in this case. Although the policy specifically describes what happens when the policyholder dies, that provision is for the benefit of the insured. Contrary to Allstate's position in this case, this provision appears to be designed to clarify that the policy does *not* automatically terminate on the policy holder's death. Without this provision, if the insured's property was damaged shortly after the policyholder died, the insurance company might not be required to cover the loss. However, this term clarifies that the policy continues for as long as it can—the end of the premium period.

We agree that this provision terminated Ralph's express insurance contract with Allstate at the end of the first premium period following his death. However, in light of Ohio's policy of construing insurance contracts against the insurance company and placing the burden on the insurance company to demonstrate that an exception applies, *see, e.g.*, *Anderson v. Highland House Co.*, 757 N.E.2d 329, 332-33 (Ohio 2001), we cannot conclude that this clause excludes any possibility of Allstate being responsible for coverage on an estoppel or implied contract theory after Ralph's death.

**E.      Whether There Is an Implied Contract Between Douglas and Allstate.**

The district court did not consider whether the parties' conduct entitled Douglas to relief based on an implied contract theory. While Douglas has not specifically pled a cause of action based on an implied contract, the complaint appears to sufficiently set forth the basis for and the facts underlying such a claim. *Cf. Randleman v. Fid. Nat'l Title Ins. Co.*, 465 F. Supp. 2d 812, 818 (N.D.

Ohio 2006) (considering cause of action based on an implied contract even though not expressly pled in the complaint).

Ohio recognizes implied-in-fact contracts. *Legros v. Tarr*, 540 N.E.2d 257, 263 (Ohio 1989). In order to find a contract implied in fact, the surrounding circumstances must be such that the court can infer a contract exists as a matter of tacit understanding between the parties. *Id.* Whether there is an implied contract turns on the facts of the particular case. *See Reali, Giampetro & Scott v. Soc. Nat'l Bank*, 729 N.E.2d 1259, 1264 (Ohio Ct. App. 1999). The Ohio Court of Appeals has noted that "[b]ecause the existence of an implied in fact contract requires crucial factual determinations regarding the intent and thought process of the parties, deference must be paid by a reviewing court to the trial court's determinations." *Fouty v. Ohio Dep't Youth Servs.*, 2006-Ohio-2957, 855 N.E.2d 909, at ¶ 57 (Ohio Ct. App. 2006).

We remand this matter for the district court to consider whether the facts of this case—particularly Douglas's continued payment of the insurance premiums, and Allstate's issuance of renewed insurance policies—created an implied contract between Douglas and Allstate to insure the house. If the facts warrant, finding an implied contract in this case would not be inconsistent with Ohio cases, which have found implied contracts to exist between parties other than those named on an express contract. *Cf. Randleman*, 465 F. Supp. 2d at 816 (holding that the complaint stated a claim for breach of an implied contract where the plaintiffs were not named insureds and could not recover under the express title insurance policy); *Capella III, L.L.C. v. Wilcox*, 2010-Ohio-4746, 940 N.E.2d 1026, at ¶ 18 (Ohio Ct. App. 2010) (implying contract between a holdover tenant and landlord when original lease had multiple tenants). Here, Douglas paid the annual insurance

premiums through Bank of America, and Allstate issued renewed policies. After the fire, Allstate appears to have acted as if the house were insured by taking possession, boarding it up, and writing Douglas a check to cover initial expenses. Therefore, we remand the matter for the district court to determine whether there is a contract implied in fact between Douglas and Allstate.

While Ralph's express insurance contract prohibits assignment, finding that there is an implied contract between Douglas and Allstate is not an assignment but an entirely new contract.

**III.**

Although Douglas does not have a claim based on an express contract theory, the district court failed to consider fully whether Allstate received constructive notice of Ralph's death and whether there is an implied in fact contract between Douglas and Allstate. Therefore, we **REVERSE** the district court's order dismissing the case with prejudice and **REMAND** the matter for the district court to consider in the first instance whether Allstate received constructive notice of Ralph's death estopping it from denying coverage, and whether there is an implied-in-fact contract to provide insurance coverage between the parties.