NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0039n.06

No. 15-2588

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

PHILLIP S. STENGER, Receiver,       )
)
     Plaintiff-Appellee,        )
)
v.         )
)
DAVID KEITH FREEMAN,       )
)
     Defendant-Appellant      )
)
and        )
)
JEDBURGH GROUP INTERNATIONAL, INC.; )
DALE W. TOLER; C.I. SOLAR SOLUTIONS, )
INC.,        )
)
     Defendants        )

**FILED**
Jan 18, 2017
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
EASTERN DISTRICT OF
MICHIGAN

BEFORE:    KEITH, BATCHELDER, and CLAY, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Phillip S. Stenger is the court-appointed Receiver of the assets of Cash Flow Financial, LLC ("CFF"). Stenger initiated the present action, seeking to recover 1.5 million dollars in funds transferred in connection with an alleged Ponzi scheme. In 2009, CFF invested 1.5 million dollars in two entities, including C.I. Solar Solutions, Inc. ("C.I. Solar"), which was controlled by Dale W. Toler, who is now deceased. David Keith Freeman, co-founder and President of Jedburgh Group International, Inc., acted as the escrow agent for the CFF investments pursuant to an escrow agreement.

After Stenger filed this action, Toler, Freeman, and Stenger signed a settlement agreement that an attorney drafted at Toler's request. The agreement provided that, in consideration for Stenger's dismissing the lawsuit, "there shall be paid, by or on behalf of Defendants, to the Receiver and/or his attorneys, the amount of One Million Five Hundred Thousand US Dollars ($1,500,000.00) in certified funds." The settlement agreement's final provision provided that "[b]**y affixing their respective signatures below, the Parties affirmatively state that the terms of the foregoing Settlement Agreement and Release of Claims have been completely read, are fully understood, and freely and voluntarily accepted.**" (emphasis in original).

Toler allegedly represented to Freeman that he was prepared to pay Stenger the entire 1.5 million dollars in liability incurred by all defendants under the settlement agreement. However, before any payment was executed, Toler committed suicide.

Stenger then filed a motion to enforce the settlement agreement against Freeman for damages due to his breach of the settlement agreement, requesting that the court enter judgment on a summary basis against Freeman for 1.5 million dollars, plus costs and interest. A magistrate judge issued a report and recommendation, recommending that the court grant Stenger's motion. Freeman filed objections and the district court issued an opinion and order: (1) overruling Freeman's objections; (2) accepting the report and recommendation; and (3) granting Stenger's motion to enforce the settlement agreement.

After carefully reviewing the record, the applicable law, and the parties' briefs, we are convinced that the district court did not err in its conclusions. The district court's opinion carefully and correctly sets out the law governing the issues raised and clearly articulates the reasons underlying its decision. Thus, issuance of a full written opinion by this court would

serve no useful purpose.  Accordingly, for the reasons stated in the district court's opinion, we

AFFIRM.

No. 15-2588
*Stenger v. Freeman, et al.*

**CLAY, Circuit Judge, concurring.** I agree with my colleagues that the district court's judgment should be affirmed. Because my analysis differs somewhat from the approach taken by the district court, I write separately to explain my reasons for reaching this conclusion.

## I. Standard of Review

"This circuit has long recognized the broad, inherent authority and equitable power of a district court to enforce an agreement in settlement of litigation pending before it." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000) (quoting *Bostick Foundry Co. v. Lindberg*, 797 F.2d 280, 282-83 (6th Cir. 1986)). A district court may summarily enforce a settlement agreement if: (1) it has subject matter jurisdiction over the separate, breach of contract controversy surrounding the settlement agreement, *Limbright v. Hofmeister*, 566 F.3d 672, 674-75 (6th Cir. 2009); (2) it determines "that agreement has been reached on all material terms[,]" *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988); and (3) the "agreement is clear and unambiguous and no issue of fact is present." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001). "[A]n evidentiary hearing is required where facts material to an agreement are disputed." *Id.* Regardless of whether an evidentiary hearing is held, the "court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock*, 841 F.2d at 154.

A district court's decision to grant a motion to enforce a settlement agreement is reviewed for abuse of discretion. *Therma-Scan*, 217 F.3d at 419. "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *United States v. Fowler*, 819 F.3d 298, 303 (6th Cir. 2016) (quoting *United States v. Bridgewater*, 606 F.3d 258, 260 (6th Cir. 2010)).

The factual findings underlying a district court's decision to enforce a settlement agreement are reviewed for clear error. *Therma-Scan*, 217 F.3d at 419. A "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Under this standard, if "the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 573-74. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574.

In a diversity action such as this one, we are bound to "apply the law, including the choice of law rules, of the forum state." *See, e.g.*, *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003). The Settlement Agreement contains a Michigan choice of law clause. Under Michigan law, such clauses are generally enforceable. *See In re Dow Corning Corp.*, 419 F.3d 543, 548-49 (6th Cir. 2005). The parties do not dispute that Michigan law governs this appeal.

## II.    Freeman's Arguments

Freeman argues that: (1) the Payment Clause in the settlement agreement executed between the parties on July 24, 2014 ("Settlement Agreement") is ambiguous, and extrinsic evidence shows that the parties agreed that he would have no payment responsibilities under the Settlement Agreement; and (2) even if the Payment Clause is not ambiguous, Freeman's performance is excused by the contract doctrines of mutual and unilateral mistake. He also requests remand for an evidentiary hearing. None of these arguments have merit.

A.    **Ambiguity**

The Settlement Agreement's Payment Clause provides as follows:

In consideration of the mutual covenants, promises, and releases in this Agreement, within fourteen (14) days of receipt by the Receiver of a copy of this Agreement fully executed by all Defendants, **there shall be paid, by or on behalf of Defendants**, to the Receiver . . . the amount of One Million Five Hundred Thousand US Dollars ($1,500,000.00) in certified funds . . . made payable to [Stenger] and delivered to [Stenger at] 2618 East Paris Ave, SE, Grand Rapids, MI 49546.

(R. 65-3, Settlement Agreement, PageID #591 (emphasis added).)

Under Michigan law, in "interpreting a contract, our obligation is to determine the intent of the contracting parties." *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003).  "[A]n unambiguous contractual provision is reflective of the parties' intent as a matter of law." *Id.*  Accordingly, if "the language of the contract is unambiguous, we [must] construe and enforce the contract as written." *Id.*  Whether a contractual provision is ambiguous is a question of law.  *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003).  A contract is ambiguous when: (1) two provisions "irreconcilably conflict with each other," *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003); or (2) "when [a term] is *equally* susceptible to more than a single meaning." *Mayor of Lansing v. Mich. Pub. Serv. Comm'n*, 680 N.W.2d 840, 847 (Mich. 2004).  In making this determination, courts must not impose an ambiguity where none exists.  *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 113 (Mich. 2005) (plurality opinion).  If the court finds an ambiguity, however, the contract's meaning becomes a question of fact.  *Port Huron Educ. Ass'n, MEA/NEA v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 237 (Mich. 1996).

Michigan recognizes two kinds of contract ambiguities: patent and latent.  *Shay v. Aldrich*, 790 N.W.2d 629, 641 (Mich. 2010).  A patent ambiguity "appears [on] the face of the document," and therefore "extrinsic evidence may not be used to identify" it. *Id.*  "A latent

ambiguity, however, is one that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." *Grosse Pointe Park*, 702 N.W.2d at 113 (internal quotation marks omitted). "Because 'the detection of a latent ambiguity requires a consideration of factors outside the instrument itself, extrinsic evidence is obviously admissible to prove the existence of the ambiguity, as well as to resolve any ambiguity proven to exist.'" *Id.* (quoting *McCarty v. Mercury Metalcraft Co.*, 127 N.W.2d 340, 344 (Mich. 1964)).

> A latent ambiguity exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the necessity for interpretation or a choice among two or more possible meanings. To verify the existence of a latent ambiguity, a court must examine the extrinsic evidence presented and determine if in fact that evidence supports an argument that the contract language at issue, under the circumstances of its formation, is susceptible to more than one interpretation. Then, if a latent ambiguity is found to exist, a court must examine the extrinsic evidence again to ascertain the meaning of the contract language at issue.

*Shay*, 790 N.W.2d at 641 (footnotes and internal quotation marks omitted).

Here, it is clear that the Payment Clause is not patently ambiguous. The Payment Clause states that $1.5 million "shall be paid, by or on behalf of Defendants" to Stenger. (R. 65-3, PageID #591.) The only fair reading of this language is that it provides for joint and several liability for all "Defendants." The Payment Clause disjunctively provides for two possible payment scenarios: (1) the $1.5 million could be paid "by . . . Defendants" in some proportion to be worked out amongst themselves; or (2) it could be paid "on behalf of Defendants" by one Defendant or a third party. In either case, the obligation to pay was undertaken "by . . . Defendants"—that is, all of the Defendants, without specifying any one Defendant in particular. This understanding is consistent with the common-law presumption that where "two or more parties to a contract promise the same performance to the same promisee, each is bound for the whole performance thereof, whether his duty is joint, several, or joint and several." Restatement

(Second) of Contracts § 289(1); *see also id.* § 289(2) (stating that where "two or more parties to a contract promise the same performance to the same promisee," they incur "a joint duty"); *Joint Liability*, Black's Law Dictionary 1054 (10th ed. 2014) (defining "joint liability" as "[l]iability shared by two or more parties"); *cf. FDIC v. First Heights Bank, FSB*, 229 F.3d 528, 541-42 (6th Cir. 2000) (observing in the context of Texas law that "co-signing an agreement raises a presumption of joint and several liability"); *Zahn v. Kroger Co. of Mich.*, 764 N.W.2d 207, 209 (Mich. 2009) (holding that modern Michigan comparative fault statutes preserve joint and several liability negotiated by contract).

Freeman argues that the Payment Clause is ambiguous because it did not say that Defendants were "independently, jointly and severally liable" or that payment would be made "by the Defendants." These arguments are unpersuasive. The Payment Clause *did* say that payment would be made "by . . . [the] Defendants," obviating the need to expressly say the words "joint and several liability." Moreover, it is equally true that the Payment Clause did not say that payment would be made "by Toler, on behalf of Freeman." Accordingly, the Payment Clause is not patently ambiguous.

Nor can Freeman benefit from any latent ambiguity that might have existed in the Settlement Agreement. In order to prevail under a latent ambiguity theory, Freeman's extrinsic evidence must ultimately show that the parties agreed that he would bear no legal responsibility for the settlement payment. *Shay*, 790 N.W.2d at 641. Freeman has failed to meet this burden. Freeman put forward no evidence that *Stenger or his counsel* understood that Freeman would have no legal responsibility for the settlement payment. Rather, at best, Freeman's extrinsic evidence shows that: (1) Toler represented to Stenger that he would be the source of the settlement funds; and (2) Toler and Freeman had a private side agreement for Toler to pay the

settlement funds. The mere fact that Toler told Stenger's counsel that he would pay the settlement sum does not show that the parties agreed that the Settlement Agreement would only be enforceable against Toler; it shows only that Toler initially volunteered to pay the settlement sum. Freeman's appropriate remedy is to seek contribution from Toler's estate if he thinks that he and Toler had an enforceable side agreement, not to void the Settlement Agreement.

**B.      Mutual Mistake**

Under Michigan law, parties to a contract may be excused from performance if they were laboring under a mutual mistake of fact at the time of contracting, or if one party was laboring under a unilateral mistake induced by fraud. *Goodwin, Inc. v. Coe*, 220 N.W.2d 664, 675 (Mich. 1974), *vacated in part on other grounds by* 224 N.W.2d 53 (Mich. 1974) (mem.).

A mutual mistake of fact is "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction." *Ford Motor Co. v. City of Woodhaven*, 716 N.W.2d 247, 256 (Mich. 2006). In order for this doctrine to apply, the relevant erroneous belief "must relate to a fact in existence at the time the contract is executed." *Lenawee Cty. Bd. of Health v. Messerly*, 331 N.W.2d 203, 207 (Mich. 1982). In other words, "the belief which is found to be in error may not be, in substance, a prediction as to a future occurrence or non-occurrence." *Id.*

Freeman asserts, without significant elaboration, that the Settlement Agreement should be voided because he and Stenger both mistakenly believed that Toler would pay the settlement sum. Freeman has offered no evidence or argument, however, that Stenger shared his mistaken belief that he had no financial obligations under the Settlement Agreement. At best, Freeman has demonstrated that Toler told Stenger's counsel that he would pay the settlement sum, but this does not demonstrate that Stenger believed that Toler assumed the sole legal obligation to

discharge the settlement. Absent any *mutual* mistake of fact, Freeman is not entitled to relief.

*Ford Motor Co.*, 716 N.W.2d at 256.

### C.    Unilateral Mistake

Under the unilateral mistake doctrine:

> Where a mistake is of so fundamental a character that the minds of the parties have never, in fact, met, or where an unconscionable advantage has been gained by mere mistake or misapprehension, and there was no gross negligence on the part of the plaintiff, either in falling into the error or in not sooner claiming redress, and no intervening rights have accrued, and the parties may still be placed in statu[s] quo, equity will interfere in its discretion, to prevent intolerable injustice.

*Union & People's Nat'l Bank v. Anderson-Campbell Co.*, 240 N.W. 19, 21 (Mich. 1932) (quoting *Kutsche v. Ford*, 192 N.W. 714, 716 (Mich. 1923). In order to invoke this doctrine, the party seeking rescission must show by clear and convincing evidence that he "has made a mistake and the other party kn[ew] it and conceal[ed] the truth from him." *Barryton State Sav. Bank v. Durkee*, 37 N.W.2d 892, 894 (Mich. 1949) (citation and internal quotation marks omitted); *Ross v. Damm*, 260 N.W. 750, 753 (Mich. 1935); *Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 285 (Mich. Ct. App. 2006).

Freeman argues that Toler's alleged fraud should excuse his performance under the unilateral mistake doctrine. I disagree, for two reasons.

First, Freeman has put forward no evidence whatsoever that Toler committed fraud. Freeman seems to assume that Toler committed suicide because he did not have the funds to satisfy the Settlement Agreement, and that Toler lied about having the funds when he negotiated the Agreement. This might well be true, but Freeman was required to produce clear and convincing evidence of fraud, and not mere unstated speculations. *Casey*, 729 N.W.2d at 285.

It is equally plausible that Toler fully intended to satisfy his end of the bargain, but committed suicide for other personal reasons that are not present in the record.[1]

Second, Freeman has put forward no evidence that Stenger knew about Freeman's mistake, and concealed the truth from him. Freeman has therefore failed to make a legally cognizable argument that he was suffering from an excusable unilateral mistake. *Durkee*, 37 N.W.2d at 894; *Ross*, 260 N.W. at 753.

### D.     Evidentiary Hearing

Finally, Freeman argues that the district court abused its discretion in summarily enforcing the Settlement Agreement, and asks us to remand for an evidentiary hearing. However, Freeman concedes that the material facts surrounding Toler's representations to Freeman and Stenger's counsel are not disputed. And as I have explained, the Payment Clause is unambiguous. Because the Settlement Agreement "is clear and unambiguous and no issue of fact is present[,]" the district court did not abuse its discretion by summarily enforcing the Settlement Agreement without an evidentiary hearing. *RE/MAX Int'l*, 271 F.3d at 646; *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976); *Edwards v. Hocking Valley Cmty. Hosp.*, 87 F. App'x 542, 546-47 (6th Cir. 2004) ("Thus, summary enforcement of a settlement agreement, as in this case, is appropriate when there is no substantial dispute regarding the existence of the agreement and the terms are unambiguous.").

### III.    Conclusion

Because Freeman failed to state grounds entitling him to relief, I concur in the Court's judgment.

---

[1] An additional problem facing Freeman's fraud theory is that he was arguably required to plead the circumstances constituting Toler's alleged fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b). Because Freeman did not come forward with *any* evidence of Toler's alleged fraud, Freeman has certainly not pled said fraud with particularity.