NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0115n.06

Case No. 21-2797

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Mar 14, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| BOBY DAVIS, Personal Representative of the Estate of Della Shields; YVONNE JONES, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| WESTFIELD INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | O P I N I O N |
| | ) | |

Before: McKEAGUE, STRANCH, and BUSH, Circuit Judges.

**McKEAGUE, Circuit Judge.** After a fire damaged Boby Davis and Yvonne Jones's deceased mother's home in March 2019, Davis and Jones submitted a claim to defendant Westfield Insurance Company under their mother's home insurance policy. But at the time Westfield had issued its yearly policy renewal to their mother in June 2018, she was already dead—unbeknownst to Westfield. Westfield, after discovering this fact during its claim investigation, denied the claim and rescinded coverage. Davis and Jones then filed this suit, bringing claims under Michigan law for breach of contract, equitable estoppel, and equitable reformation. The district court granted summary judgment to Westfield. We affirm.

I.

From 2013 until her death in March 2018, Della Shields received a yearly homeowner's insurance policy from Westfield covering her home in Muskegon, Michigan. Shields was the sole

named insured in the yearly policy declarations. At the time of Shields's death, her adult daughter, Yvonne Jones, lived with her at the home in Muskegon. Jones qualified as an "insured" under the policy because she was a "resident[] of the household" and was a "relative" of Shields. R. 40-6 at PID 558. Boby Davis, another one of Shields's adult children, was Shields's conservator prior to her death. Jones and Davis co-owned the home with their mother. After Shields's death, Davis became aware that Westfield insured the home after noticing monthly debits from Westfield out of Shields's bank account to pay the policy premiums.

The policy in effect at the time of Shields's death ran from June 2017 to June 2018. The policy contained a death clause, which specified that, if the "person named in the Declarations" dies, Westfield will "insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death[.]" *Id.* at PID 580.

Without knowledge of Shields's death, Westfield issued a policy renewal in June 2018 to run until June 2019. Shields was again the sole named insured. Davis, knowing of the policy renewal, continued to deposit funds into Shields's bank account to cover the premiums. Westfield continued to debit payment from the now-deceased Shields's account. In March 2019, a fire damaged the Shields home. Davis then submitted a claim under the Westfield policy. After investigation, Westfield denied the claim and rescinded coverage on grounds that it was unaware Shields was dead when it issued the policy renewal in June 2018. Westfield refunded all premiums paid under the 2018–2019 policy.

Davis, representing her mother's estate, filed this suit together with her sibling, Jones, against Westfield in Michigan state court. Westfield, an Ohio company, removed the case to federal court. Davis and Jones brought claims for breach of contract, reformation, violations of

the Michigan Uniform Trade Practices Act, and equitable estoppel. Westfield moved for summary judgment, arguing that the policy issued to Shields in June 2018 was void under fundamental principles of contract law because Shields was dead at the time of the renewal. The district court agreed, reasoning that no contract existed as a matter of law. The plaintiffs now appeal.

## II.

"We review a district court's grant of summary judgment de novo[.]" *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). This case was brought by Michigan residents in Michigan against an out-of-state insurer, "so we apply Michigan law as enunciated by the Michigan Supreme Court." *Tooling, Mfg. & Techs. Ass'n v. Hartford Fire Ins. Co.*, 693 F.3d 665, 670 (6th Cir. 2012). "Where the Michigan Supreme Court has not addressed an issue, we may look to opinions issued by the Michigan appellate courts and should follow their reasoning unless we are 'convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (quoting *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001)). In applying Michigan law, we interpret the terms of an insurance policy "in accordance with Michigan's well-established principles of contract construction." *Id.* (quoting *Citizens Ins. Co. v. Pro–Seal Serv. Grp., Inc.*, 730 N.W.2d 682, 685 (Mich. 2007)).

The plaintiffs argue that summary judgment is inappropriate because the court may grant reformation of the June 2018 policy by substituting Jones for Shields as the named insured. But to obtain the equitable remedy of reformation (and to obtain damages for breach of contract), the plaintiffs must first show the existence of a valid contract. *See Bank of Am., NA v. First Am. Title Ins. Co.*, 878 N.W.2d 816, 829–30 (Mich. 2016); *Ross v. Damm*, 260 N.W. 750, 753 (Mich. 1935). To that end, the plaintiffs argue that the June 2018 policy renewal was not an offer to enter a "new"

contract, but rather a continuation of the contract already in effect between Westfield and Shields. We disagree. Although the Michigan Supreme Court has not addressed this precise question, Michigan's "well-established principles" of contract law cut against the plaintiffs' theory. *Citizens Ins. Co.*, 730 N.W.2d at 685.

Start with elementary principles of contract law. *See Bank of Am.*, 878 N.W.2d at 830. A contract cannot be formed without offer and acceptance. *Mathieu v. Wubbe*, 47 N.W.2d 670, 673 (Mich. 1951). Offer and acceptance require an objective manifestation of assent between the offeror and the offeree, and only the person to whom an offer is directed has the power to assent to the offer. *Goldman v. Century Ins. Co.*, 93 N.W.2d 240, 243 (Mich. 1958); Restatement (Second) of Contracts § 52 (1981); *see also Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 258 (Mich. 2003) ("Where mutual assent does not exist, a contract does not exist.").

These principles, Michigan appellate courts have recognized, apply in the context of "renewed" insurance contracts. *Russell v. State Farm Mut. Auto. Ins. Co.*, 209 N.W.2d 815, 816–17 (Mich. Ct. App. 1973). A "renewal contract" is a "new, and separate and distinct contract, unless the intention of the parties is shown clearly that the original and renewal agreements shall constitute one continuous contract." *Id.* at 816 (quoting 13 Appleman, Insurance Law & Practice, § 7648 (rev. ed. 1972)); *Maurer v. Fremont Ins. Co.*, 926 N.W.2d 848, 854 n.6 (Mich. Ct. App. 2018) (citing *Russell*, 209 N.W.2d at 816) ("A renewal policy is considered to be a new contract."). For the plaintiffs here to prevail, then, they must show that Westfield and Shields intended for the June 2018 renewal to "constitute one continuous contract." *Russell*, 209 N.W.2d at 816 (quoting Appleman, *supra*, § 7648). They cannot make that showing.

The 2017 policy had an express start date of June 20, 2017, and express end date of June 20, 2018. And nothing in the 2017 policy indicates that the parties intended for Westfield to renew the policy beyond Shields's death. The inclusion of the death clause, which specified that Westfield would insure Shields's "legal representative . . . only with respect to the premises and property of the deceased covered under the policy at the time of death[,]" indicates the opposite. *See, e.g.*, *Ramsey v. Allstate Ins. Co.*, 416 F. App'x 516, 519 (6th Cir. 2011) (interpreting home insurance policy under Ohio law with similar death clause to conclude that, while a son "did meet the policy's definition of an insured person, the express insurance contract terminated at the end of the premium period following" the named-insured father's death). Therefore, because the 2018 policy did not constitute a continuing contract with the 2017 policy, the renewal declaration was merely an offer to Shields to enter a new contract. And Shields lacked capacity to assent to that offer on account of her death. *See, e.g., Thompson v. Floyd Jude Living Tr.*, No. 337368, 2018 WL 1733440, at *3 (Mich. Ct. App. Apr. 10, 2018) (holding that because the named insured "was deceased at the time of the policy renewal . . . he lacked the ability to enter into a new contract with [the insurer.]"); Restatement (Second) of Contracts §§ 48, 52.

In light of our precedent, it is worth addressing whether Westfield's issuance of the June 2018 renewal declaration and acceptance of premiums from Shields's bank account formed an implied-in-fact contract with Shields's estate. *See Ramsey*, 416 F. App'x at 521. An implied-in-fact contract is one where parties manifest assent by actions or words other than express terms of offer and acceptance. *Erickson v. Goodell Oil Co.*, 180 N.W.2d 798, 800 (Mich. 1970).

For example, in *Ramsey*, the named insured on a homeowner's policy died, leaving the home to his son, who qualified as an insured under the policy. 416 F. App'x at 518. Until a fire damaged the home 6 years after the father's death, the insurer issued a yearly renewal in the

deceased father's name, and the bank with a mortgage on the home paid the premiums. *Id.* After the fire, the insurance company denied the son's claim, determining that it had no obligation to provide coverage to the son because the policy was in his deceased father's name. *Id.* at 518–19. This court, applying Ohio law, held that "the express insurance contract terminated at the end of the premium period following" the father's death, and therefore the son "ceased to be an insured person under" that policy. *Id.* at 519. Nonetheless, the court remanded for fact finding on whether the parties had formed an implied contract. *Id.* at 521–22. The court reasoned that the insurer may have had constructive knowledge of the father's death and that, after the fire, the insurer proceeded as if the house were insured by taking possession and writing the son a check for initial expenses. *Id.* at 520–21.

Unlike in *Ramsey*, here "there is no indication from the facts in the record (and no argument advanced by [the plaintiffs]) that [Westfield] had actual or constructive notice of [Shields's] death prior to the fire loss." *Wells Fargo Bank, N.A. v. Allstate Ins. Co.*, No. 4:14CV01379, 2016 WL 1182724, at *4 (N.D. Ohio Mar. 28, 2016). Indeed, the plaintiffs acknowledge that they did not notify Westfield of their mother's death and that they continued to deposit funds into their mother's bank account from which Westfield debited the premiums. And we have found no case in Michigan recognizing an implied contract under these circumstances.

The plaintiffs fall back on cases in other states where courts granted reformation of renewed home-insurance policies that were issued to a deceased named insured. But the seminal case on which the plaintiffs rely, *Taylor v. Glens Falls Ins. Co.*, 32 So. 887 (Fla. 1902), is materially different from this case. In *Taylor*, a husband and wife lived together in a home titled in the wife's name. *Id.* at 888. The insurance agent, dealing exclusively with the husband, issued a policy in the wife's name. *Id.* After the wife died, title passed to the husband. *Id.* at 891. Later, the same

insurance agent, dealing with the husband, issued a policy renewal in the wife's name. *Id.* at 889. However, the agent knew that the wife "was dead at the time of the issuance of the policy, yet from momentary forgetfulness of the fact at the time inadvertently made it out directly in her name." *Id.* In other words, the husband and the insurance agent manifested mutual assent to contract despite the policy being formally issued in the wife's name. *Id.* at 891. Under these facts, the Florida Supreme Court held that the husband was entitled to reformation to effectuate the intent of the parties because the insurance agent intended to contract with the husband. *Id.* In this case, however, Westfield did not know of Shields's death at the time it issued the renewal. The equities may well weigh in the plaintiffs' favor—it is hard to see how Westfield's risk was any different if the policy had been issued to Jones (who qualified as insured under the 2017 policy) rather than her mother—but a court is powerless to grant the equitable remedy of reformation in the absence of a valid contract. *Ross*, 260 N.W. at 753.

Finally, because no contract existed as a matter of law, the plaintiffs' claim to equitably estop Westfield from denying coverage must fail. "Equitable estoppel does not operate 'to bring into existence a contract not made by the parties, [or] to create a liability contrary to the express provisions of the contract the parties did make." *Thompson*, 2018 WL 1733440, at *4 (quoting *Ruddock v. Detroit Life Ins. Co.*, 177 N.W. 242, 248 (Mich. 1920)).

Because the policy renewal declaration issued in June 2018 did not form a valid contract under Michigan law, Westfield is entitled to summary judgment on the plaintiffs' claims. We affirm.